[No. 8108.   Department One.   June 29, 1909.]

A. W. Primley, *Respondent*, v. Elbe Lumber & Shingle Company, *Appellant*.[1]

Master and Servant—Assumption of Risks—Promise to Remedy—Incompetent Co-servants. An action by a sawyer for injuries sustained through the negligent employment of an incompetent co-servant as a setter does not fall within the rule that a servant does not assume the risks where he continues in the service on the promise of the master to remove the danger, where it appears that the co-servant C., represented to be an "apt fellow," was to be tried for a couple of days, and if he did not make good another man was to be sent, and the sawyer merely objected to C. as incompetent, stating that it would save time and lumber to have another man; since the anticipated injury was not personal to the sawyer.

Appeal from a judgment of the superior court for Pierce county, Shackleford, J., entered January 14, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee in a sawmill.   Reversed.

*F. S. Blattner, L. F. Chester*, and *L. B. da Ponte*, for appellant.

*Govnor Teats, Hugo Metzler*, and *Leo Teats*, for respondent.

Morris, J.—The respondent was in the employ of the appellant as head sawyer, and on the 23d of May, 1908, was injured.   The negligence complained of was in the employment by appellant of one Coombs as a setter, it being alleged that respondent, knowing Coombs was incompetent and inexperienced as a setter, objected to working with him, but that he was induced to continue by reason of the promise of the appellant that, if Coombs proved incompetent, another setter would be procured, and that, relying upon this promise, respondent continued in his employment until his injury, some time in the afternoon of the same day.

[1]Reported in 102 Pac. 763.

The whole case hinges on whether the case falls within the rule contended for by respondent: That knowledge of the danger does not, in case of injury, preclude a recovery by the servant, where the master promises to remedy the defect or remove the danger, and the servant continues in the employment expressly relying upon this promise. The establishment of such a rule requires no citation of authority. It has become settled, as one of the wholesome principles of the law. It is necessary, therefore, to examine so much of the record as touches this point to ascertain if the case before us is a proper one for the application of such rule. The respondent had gone to the mill office to look over the orders to be cut, and while there, as he testifies, the following conversation with the foreman of appellant occurred:

"I said: 'We haven't any setter for that'; and he said: 'How about Coombs? He's a pretty apt fellow; we'll put him on.' I said: 'Did he ever work on the carriages?' Well, he did not know, but he would catch on pretty quick. I said: 'You better telephone for a setter; it will save time for the company and probably save lumber'; but he said: 'We will try Coombs anyway for a couple of days, and if he don't make good, we will send for another man'."

The next conversation concerning Coombs was after the work had commenced. Respondent says that the foreman came there a little while before the accident,

"and I told him then, that he better get another setter. He said: 'Oh, Hell, give him a chance; he hasn't had any chance to learn anything yet,' and I said: 'It will be a long time before he will learn.' But he said: 'No, Hell, we will try him out yet; he will catch on.'"

On cross-examination he extends this conversation by adding:

"I said: 'If you are going to put us on that log, you better get a setter. There are a couple of other fellows that know about setting, why not put them on? Dell Ackley is pretty good and also that Billy Hoffman would do.' He said: 'We want Ackley to run the edger. He could do it,

but he has enough to tend to,' and he wanted Billy on the log deck. He said: 'We have no use for Coombs at the edger, and we will put him on· there'."

This is all the testimony disclosed by the record concerning the placing of Coombs as the setter. Respondent then relates how, after working some time, seeing that Coombs did not understand the signals, he walked over and showed him the figure 3 upon the dial, which was the proper point for the set, in the size it was then desired to saw; but Coombs, notwithstanding this, set about a third of an inch past the figure, and the cant began to turn over, and while attempting with a peavey to "pry it in," as he says, it turned against him, causing the injury.

If we should concede that the testimony was sufficient to justify a finding that respondent was in danger because of the inexperience or incompetency of Coombs, and that the peril of the situation was called to the attention of appellant, we can find in this evidence no promise on the part of the appellant to remove this danger or provide any remedy for this peril. The first assertion by the master as to Coombs was that, "He's a pretty apt fellow. We will put him on . . . he would catch on pretty quick." There does not seem to be any inducement here held out to the respondent to work with an inexperienced man temporarily, upon a promise to substitute in the near future, or at any other time, a man of knowledge, fitness, and experience. It would rather go to show that the appellant thought Coombs could do the work with· reasonable satisfaction, and was to be kept on the job. The next statement by appellant is: "We will try Coombs anyway, for a couple of days, and if he don't make good, we will send for another man"; no concession of Coombs' ability or lack of it, but an expressed purpose to put him on the job in order to see "if he don't make good"; no promise to procure another man for the work, unless it was the conjectural one, "if he don't make good"; no re-

questing respondent to hold on temporarily until appellant could procure a setter. The only suggestion of "another man" was in case Coombs did not make good, which at that time the appellant did not seem willing to admit. The same is true of the third suggestion, as to the incompetency of Coombs. The reply then was to give him a further chance and he would yet "catch on." Moreover, any reliance on the part of respondent that appellant would get another man in Coombs' place must have been destroyed when it appeared that there were two men then in the mill, Ackley and Hoffman, who were competent to act as setters, but when asked to put on these men, appellant refused to do so, but insisted on keeping Coombs at work. This was an indication of no present intention or purpose to obtain another setter. We look in vain through this evidence for any promise to obtain a better man, and a remaining at work with a reliance upon such promise. Neither is there in the case any expression of an intention or purpose to quit work on the part of respondent, nor a continuance, relying upon the substitution of an experienced setter.

While we are aware some authorities have gone to the extent of holding that there need be no expressed complaint, but that any act or expression by which the servant gives the master to understand that he is unwilling to continue in the employment, unless the apprehended cause of danger is removed, constitutes a sufficient complaint, and any act or expression by which the master gives the servant to understand that the cause of danger will be removed constitutes a sufficient promise (Labatt, Vol. 1, p. 1185) ; yet, reluctant as we are to disturb this verdict because of insufficiency of evidence, we can find no expressed nor implied complaint of danger to himself, nor any objection to continuing in the employment on the part of respondent, and no act or expression on the part of appellant which would justify us in holding that it promised to relieve respondent from the dangers of any situation which it, or even respondent himself,

believed to be imminent because of Coombs. All the cases wherein the doctrine contended for by respondent is maintained hold that, in order to relieve the servant from the operation of the doctrine of assumed risk from a defect complained of, the danger from which he was no longer willing to assume, it is essential that his remaining in the employment be induced by the promise of the master to remedy the defect, and that otherwise he would not have done so; and many of these cases hold that the only application of the principle is to tools, appliances, and machinery which are found to be defective. *Showalter v. Fairbanks, Morse & Co.,* 88 Wis. 376, 60 N. W. 257.

But, conceding the application of the rule for the purpose of respondent's contention of negligence, we cannot find in the testimony the essential elements calling for its announcement. It is suggested by appellant that respondent's objection to working with Coombs, if he did object, was not made upon the ground of his personal safety, but rather that Coombs' inexperience would cause loss of time, labor, and material; the objection being because of the effect upon the general employment, and not any fear of injury to himself. The evidence justifies this contention. The only ground of objection made to Coombs was in the first interview, when respondent said to the foreman of appellant: "You better telephone for a setter; it will save time for the company and probably save lumber." While it is commendable for a servant to thus guard the interests of his employer, the injury or damage anticipated, upon the ground of which he complains, must be one personal to himself. The effect upon him, and not upon his employer, is the test. *St. Louis & S. F. R. Co. v. Mealman* (Kan.), 97 Pac. 381; *Lewis v. N. Y. & N. E. R. Co.,* 153 Mass. 73, 26 N. E. 431, 10 L. R. A. 513; *Bodwell v. Nashua Mfg. Co.,* 70 N. H. 390, 47 Atl. 613.

In *Industrial Lumber Co. v. Johnson,* 22 Tex. Civ. App. 596, 55 S. W. 362, the court says, in speaking of this rule,

that the removal of the dangerous condition must be as a protection to the servant. In the case before us, respondent neither complained of his own risk nor asked for protection. He said nothing calling in question the appellant's duty to himself. Failing in this, his recovery does not fall within any rule of law.

The judgment is reversed, with instructions to the court below to dismiss the action.

Rudkin, C. J., Fullerton, Gose, and Chadwick, JJ., concur.