[No. 8393.   Department One.   February 9, 1910.]

Charles J. Alkire, *Respondent*, v. Myers Lumber Company, *Appellant*.[1]

Master and Servant—Defective Appliance—Promise to Repair —Pleading and Proof—Variance.   It is not a failure of proof to allege the promise of the master to furnish a new snap line on a donkey engine and that the line complained of broke and injured the plaintiff, and to prove that the line which broke was not in use at the time of the promise, but was a defective line substituted by the master.

Trial—Waiver of Nonsuit—Amendment to Conform to Proof. Where a motion for nonsuit was waived by the defendant by putting in its evidence, the case will be considered on all the evidence, received without objection, and the pleadings will be deemed amended to conform to the issue presented in its entirety.

Master and Servant—Defective Appliance—Promise to Repair —Performance of Promise—Evidence—Sufficiency.   As a promise to repair need not be in express words, the evidence is sufficient to show a promise to repair a defective snap line, where it appears that complaint was made of the "rigging," which included the snap line, and the employer's manager replied that he had ordered or would order a "new line," and undertook to replace not only "the line" but the snap line also.

Same—Promise to Repair—Reason for Complaint.   A complaint made by the engineer of a donkey engine as to a defective rigging, and that it was breaking every day and that some one would be killed by it, sufficiently shows that self-protection was the motive, as his position was in the zone of danger.

[1]Reported in 106 Pac. 915.

SAME—ASSUMPTION OF RISKS—PROMISE—IMMINENT DANGERS. An engineer of a donkey engine who complained of a defective cable, and was promised a new one, does not assume the risks on continuing the work, on the theory that the danger is imminent, apparent, and pending; since the promise is an agreement that the master should temporarily assume the risk.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict of $9,000 for personal injuries is not excessive, where it appears that the plaintiff, a blacksmith and engineer, 32 years of age, in good health and earning three dollars per day, was injured by the breaking of a cable, was in a hospital eight weeks, one kidney was removed, suffered greatly, and was put to an expense of $700 to $1,000 for treatment.

TRIAL—IMPROPER QUESTIONS—PREJUDICE. No prejudice results from an improper question as to an inquiry made as to whether a man would be accepted for insurance after the removal of one kidney, which was objected to as hearsay, the objection sustained, and the question withdrawn without having been answered.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered April 14, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action for injuries sustained by an engineer of a logging engine. Affirmed.

*Hudson & Holt* (*Chas. Bedford,* of counsel), for appellant.

*L. C. Stevenson* and *Roy E. Bigham* (*J. A. Sorley,* of counsel), for respondent.

GOSE, J.—This is an action for the recovery of damages for personal injuries. There was a verdict and judgment for the plaintiff, from which the defendant has appealed.

The negligence charged in the complaint is, that the respondent was in the employ of the appellant as a donkey engineer; that the engine was used for the purpose of drawing logs from the woods by means of a cable and snap line, which worked over a drum attached to the engine; that a few days preceding the injury, the respondent notified the appellant that the cable and snap line were worn out and defective, and objected to using them; that the appellant then promised

the respondent that he would replace them with new ones which would be sufficient to perform the work; that the respondent, relying upon the promise, and at the appellant's request, continued as engineer and was in the discharge of his duties when he received the injury; that the appellant furnished a new main cable, but failed to furnish a new snap line, and that the snap line broke, the recoil striking the respondent and causing the injury complained of. The answer joined issue on the charge of neligence and promise to repair, and pleaded affirmatively that the respondent assumed the hazard of the employment, and that his negligence caused the injury. At the close of the respondent's testimony the appellant moved for a nonsuit, and at the conclusion of all the testimony moved for a directed verdict.

The appellant thus states the principal question in the case:

"The primary question in this case is this: Was there such a failure of proof as entitled the defendant to a judgment on its motions or requests for a peremptory instruction or to a new trial after the verdict of the jury had established the fact that the *snap line* which broke and struck respondent was not the snap line to which the alleged promise related, and was not the snap line in use at the time this alleged promise was made."

The determination of this question necessitates a brief consideration of the evidence, and the applicable principles of law. The evidence shows that the snap line which broke and struck the respondent was a short line attached to the main cable by means of a hook and eye, and that it was used for making short hauls of the logs. At the close of the respondent's testimony it had not been shown that any change had been made in the snap line at the time of the accident. The appellant's evidence, however, disclosed that, a short time before the accident, the appellant took a piece of cable theretofore used at its mill and substituted it for the snap line which it had been using, and that this was the line in use and which broke and injured the respondent. After this tes-

timony had been introduced, the respondent offered evidence which tended to show that the substituted snap line was installed without his knowledge, and that it was defective and practically worn out when installed.    There was a sharp conflict in the evidence as to the condition of this line, the appellant's witnesses testifying that it was practically new and adequate for the work.    The precise point made is that the complaint charges the promise of the master to furnish a new snap line, the failure to do so, and that the line complained of broke and caused the injury; whilst the jury upon all the evidence, in answer to a special interrogatory, found that the line which broke was not the line which was in use at the time of the alleged promise.

It is earnestly contended that this was not a variance, but an entire failure of proof.    We cannot agree with this contention.    The gravamen of the charge is that the master agreed to furnish a new cable and snap line, and that it did furnish a new cable but failed to furnish a new snap line.    It would be highly technical, therefore, to hold that there was a failure of proof.    Whether the appellant continued to use the same defective snap line, or replaced it with another defective one, would not affect the right of recovery or amount to a failure of proof.    The promise, if made, could only be performed by furnishing another line apparently adequate for the use.    Moreover, at the close of respondent's evidence, the appellant had the option to stand on its motion for a nonsuit or to submit its evidence.    It chose the latter course, and the case now stands, not upon the pleadings and the respondent's evidence alone, but upon the case as made upon all the evidence.    If the case made by the appellant, or by it and the respondent in his rebuttal, is not in harmony with the pleadings, no objections having been interposed to the evidence, the pleadings will be treated as amended so as to conform to the issue actually presented by the evidence as an entirety.    *Kluska v. Yeomans*, 54 Wash. 465, 103 Pac. 819.

The next contention is that there was neither a promise to

furnish a new snap line, nor a reliance upon the promise if
any was made. The testimony of the respondent in this be-
half tends to show that he said to the appellant's manager,
about ten days before the accident, that the rigging was
defective, that it was breaking every day, and that some one
would be killed by it; and that the latter replied either that
he had ordered, or would order, a new line; that he relied
upon the promise and continued at his work; that a few
days later a new cable was furnished, and that a few days
before the accident a defective snap line was substituted for
the one complained of. It is true that the respondent made
no definite objection to the snap line, but it was a part of
the rigging. However, the manager to whom the complaint
was made seems to have understood that it went to the
efficiency of both lines; for, as we have seen, he sought to
remedy the defect. The master's promise to repair need not
be in express words; it may be implied from the words spoken
or from the subsequent conduct of the master.

"Any acts or expressions by which the servant gives the
proper agent of the employer to understand that he is unwill-
ing to continue in the employment, unless the cause of danger
is removed, constitute a sufficient complaint; and any acts or
expressions by which such agent gives the servant to under-
stand that the cause of the danger will be removed, constitute
a sufficient promise." 1 Labatt, Master & Servant, § 419.

It is also urged that the servant will be held to have
assumed the risk unless his complaint was made in reference
to his personal safety, and that the record does not show that
it was made upon this ground. *Primley v. Elbe Lumber &
Shingle Co.*, 53 Wash. 687, 102 Pac. 763, is cited as sup-
porting this contention. We think the evidence does show
that self-protection was the motive which prompted the com-
plaint. The complaint, as we have stated, was that some one
would be killed if a better cable was not furnished. The
statement necessarily applied to the respondent as his posi-
tion at the engine placed him in the danger zone. This fact
was known to the master. In the *Primley* case the objection

was that the retention of a certain employee would cause a loss of time, labor, and material. The question of personal safety was not suggested to the master.

"When complaining of defective instrumentalities or machinery it is not necessary that the servant shall state in exact words that he apprehends danger to himself by reason of the defects, nor need there be a formal notification that he will leave the service unless the defect be removed or remedied. It is sufficient if, from the circumstances of the case, it can be fairly inferred that the servant is complaining on his own account, and that he was induced to continue in the service by reason of the promise. It is ordinarily for the jury to say whether the servant's reliance on the promise by the master induced him to continue work." 1 Labatt, Master & Servant, § 421.

The point is made that, when the danger is imminent, apparent, and impending, the servant assumes the risk if he continues to work. The promise is in effect an agreement by the master to assume temporarily the responsibility for any accident that may occur. 1 Labatt, Master & Servant, § 431. After the promise has been made, the servant does not assume the risk of an injury until such time has elapsed as to preclude all reasonable expectation that the promise will be kept. *Shea v. Seattle Lumber Co.*, 47 Wash. 70, 91 Pac. 623; Shearman & Redfield, Negligence, § 215. We think there was sufficient evidence to carry the case to the jury tending to show that a complaint was made to the master, that it promised to remedy the defect, and failed to do so; that the respondent relied upon the promise; that the complaint was made because the respondent was apprehensive of his personal safety; that the master so understood it, and that the injury resulted from the failure of the master to keep its promise. The respondent was entitled to have the jury advised as to the principles of law applicable to these facts, and the motions were properly denied.

The next point urged is that the appellant should have been granted a new trial on account of erroneous instructions.

It is urged that the court did not correctly state the law as
to the risk which the servant assumes. The instructions, as
an entirety, were more favorable to the appellant than the
issue warranted. The respondent's case as to a promise and
a failure to repair was not submitted to the jury under
proper instructions, and he and not the appellant was preju-
diced thereby.

The appellant's requested instructions were but a restate-
ment of the contention made in the motion for a directed
verdict, and were properly refused.

The jury returned a verdict for $9,000, and a judgment
was entered for this amount. It is contended that the ver-
dict was excessive. The respondent at the time of the injury
was thirty-two years of age, in good health, a blacksmith
and engineer by trade, and was earning three dollars per
day. After receiving the injury he was in the hospital for
several days. About a month later he was again taken to
the hospital in a serious condition, and one kidney was
removed. He remained in the hospital for about eight weeks
after the operation. The testimony shows that the pain
and suffering were great; that the expenses for a nurse and
surgeon were between $700 and $1,000; and that it is
probable that he will never be able to resume his former
work. While the damages awarded were liberal, we cannot
say that they were excessive.

A physician, testifying as to the effect the removal of the
kidney will have on the respondent's life, said: "I inquired of
my superior officials or officers of the life insurance company
for which I do the examining to find out whether they would
accept this man for insurance." The appellant's counsel
interposed an objection to the evidence on the ground that
it was hearsay. The court, on ruling upon the objections,
said: "That is not proper. It is simply repeating hearsay."
Whereupon the respondent's counsel stated that he would
withdraw the question which brought forth the answer. The
inquiry was improper, but is not of sufficient gravity to

warrant a reversal. The witness merely stated that he had inquired, but the record does not disclose that the inquiry was answered. The ruling of the court made it plain to the jury that the evidence was not to be considered.

The views we have expressed require an affirmance of the judgment, and it is so ordered.

RUDKIN, C. J., CHADWICK, and FULLERTON, JJ., concur.