[No. 9273.    Department Two.    February 1, 1911.]

ALECK B. BESELOFF, *Respondent*, v. CHARLES J. STRANDBERG et al., *Appellants*.[1]

MASTER AND SERVANT—ASSUMPTION OF RISKS—QUESTION FOR JURY. A miner working in a tunnel does not assume the risks where, upon discovering a crack in the roof, he called the same to the attention of the owner, who made an inspection and pronounced it safe, directing the miner to work there the rest of the day, after which props would be put in.

SAME—PROMISE TO REPAIR. In such a case, the promise to put in props after the miner had quit for the day, was the inducement for the miner's continuance of work, and is not open to the objection that the promise and inducement do not concur.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS. Error in defining contributory negligence where there was no evidence thereof is superfluous and not prejudicial to defendant.

SAME. Stating that assumption of risks means that "he took the chances of it" is not prejudicial error where the instructions as a whole fairly defined assumption of risks.

[1]Reported in 113 Pac. 250.

Appeal from a judgment of the superior court for King county, Gay, J., entered May 20, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a mucker in a tunnel through the fall of overhead rock. Affirmed.

*Brady & Rummens* and *Carl J. Smith*, for appellants.

*Jay C. Allen* and *Philip Tindall*, for respondent.

CHADWICK, J.—Plaintiff was employed as a mucker in a mine located on Esther Creek, near Fairbanks, Alaska. The mine was owned and operated by defendants. The mine was in gravel formation, and the manner of operating was as follows: A shaft had been sunk to the bed rock, and from the bottom of this shaft a drift or tunnel, about ten or twelve feet wide and eight feet high, was made into the dirt. The bed rock thus became the floor of the tunnel. The earth and gravel was frozen from the surface to the bed rock, and the tunnel was extended by driving steam pipes, called "points," into the face, through which steam was driven, until the earth and gravel was sufficiently thawed to permit of their removal. This was done by loading the loose material in wheelbarrows. These were propelled to the shaft, where the contents were carried to the surface and there washed for gold. The tunnel was lighted by electricity, the light being extended nearly to its face.

At about 5:30 o'clock in the afternoon, plaintiff, while engaged about his work, discovered a crack in the top and running lengthwise of the tunnel. This crack was about five or six feet long and, while the testimony is not entirely clear, it is likely that it was large enough for him to put his fingers in. At about this time Dave Strandberg, one of the defendants, came into the tunnel, and his attention was called to the crack by plaintiff, who said, "That looks bad." Strandberg carried a candle set in a miner's candlestick. He examined the crack, aided by the light of the candle, and then stuck the candle into the side wall of the tunnel and picked

at the crack with a miner's pick. He satisfied himself that it was safe, saying to the plaintiff: "That is all right. You must finish all loose dirt. You keep working until six. When you quit I will put props under it and hold it up." After a short time, five or ten minutes (plaintiff had made one load and was reloading his barrow), a chunk of frozen earth fell from the roof of the tunnel, striking plaintiff on the ankle, breaking the ankle, and resulting in a permanent anchylosis and dislocation. From a verdict entered on a judgment in favor of the plaintiff, defendants have appealed.

The defense in this case is grounded on the doctrine of assumption of risk, and that the danger was open, obvious, and so apparent that a man of ordinary prudence would not hazard his life and limb by continuing his work after notice thereof. The defense also involves the principle, which we believe has never been directly urged in this court—that is, admitting that Strandberg did promise to repair or, as in this case, to timber the roof of the tunnel, it was a promise to repair or remove the danger after respondent's work was done, and was not made for the benefit of, or with intention that it would inure to his benefit during the time he was at his work, the testimony showing that he would go off shift at six o'clock; and therefore the promise would not relieve respondent of his duty to himself, or exempt him from the rule of assumption of risk. It would be idle for us to review the many cases decided by this court wherein it has been held that a man is bound to exercise common sense and take notice of such dangers as by the use of his senses are apparent, or ought to be apparent, to a man of ordinary prudence. These are general rules, but they are not so fixed that they may not be modified when the testimony reveals a state of compelling circumstances. Just how far a servant may go in acting upon a promise of the master to make a dangerous place safe cannot be set down as an inflexible rule of law; for, notwithstanding expressions which may be gleaned from the cases, it is generally a question of fact to be determined by the jury

having reference to the qualifying facts and circumstances of the particular case. *Bailey v. Mukilteo Lumber Co.*, 44 Wash. 581, 87 Pac. 819; *Christianson v. Pacific Bridge Co.*, 27 Wash. 582, 68 Pac. 191; *Johnson v. Collier*, 54 Wash. 478, 103 Pac. 818; *Morgan v. Rainier Beach Lumber Co.*, 51 Wash. 335, 98 Pac. 1120, 22 L. R. A. (N. S.) 472.

So here, although appellants insist that respondent knew, or should have known, that the place was dangerous, and that he assumed the risk of continuing his work, they are met by the judgment of one of the defendants who, after a careful inspection with candle and pick, pronounced the tunnel safe. Shall we then say that, where two men, each having an interest in his own safety, have differed in their judgment, the minds of reasonable men sitting as jurors cannot differ, and that respondent should be held to answer for his negligence while appellant is exonerated from his error of judgment? In all hazardous occupations, and especially in mining, occasions must of necessity arise—and frequently, too—which call for the exercise of judgment. One may see a danger and the other insist that there is no danger. At such times, it would seem, and indeed the history of the cases shows it to be true, that almost without exception the common laborer will give way to the judgment of the master. Inexperience will follow that experience which bears an assumption of superior knowledge. The obvious deductions from these premises, then, is that, where a question of danger arises and there is a difference of judgment and the master assures the servant that it is safe to proceed with his work, the servant proceeds at the risk of the master, and the defense of assumption of risk will not avail, unless there is a showing of a new condition following the assurance of the master that would bring the servant within the general rule.

In *Green v. Western American Co.*, 30 Wash. 87, 70 Pac. 310, quotation is made from *Harder etc. Min. Co. v. Schmidt*, 104 Fed. 282:

"Whatever may be the exemption of the employer from

liability for injuries caused by a danger that is obvious to the injured, such exemption will not be accorded where the nature of the menace is so uncertain as to cause discussion between the employees and the employer, with the result that the employer dissuades the employee of his apprehension."

The *Green* case and the principle there announced have been consistently followed by this court. *Goldthorpe v. Clarke-Nickerson Lumber Co.*, 31 Wash. 467, 71 Pac. 1071; *Grout v. Tacoma Eastern R. Co.*, 33 Wash. 524, 74 Pac. 665.

Passing to the next question; that is, that the promise if made was not made for the benefit of respondent, and therefore did not absolve him from the assumption of risk. The promise, it will be remembered, was to put in timbers at or after six o'clock, the time when respondent would quit his work for the day. Appellants cite 1 Dresser, Employer's Liability, pp. 588-9: "In other words, the promise must be the inducement for the plaintiff to continue at work and the promise and inducement must concur."

This is unquestionably the rule, and it does not in our judgment bear the construction put upon it by counsel; that is, that "in order to shift the assumption of risk by reason of the promise to repair, it must be such a repair as will affect the safety of the person to whom the promise is made." The true rule is, was the promise the inducement for the servant to continue his work. If it was, he was warranted in so doing, unless it would appear that the danger was such as to deter a man of ordinary prudence. True, the promise and the inducement must concur; but it does not follow that performance shall follow forthwith. If it did, the question we are now discussing would never have arisen. In *Morgan v. Rainier Beach Lumber Co.*, *supra*, the principle is clearly announced that a servant who continues his work, under a promise to repair within a reasonable time, cannot be held to an assumption of risk when injured within the limit of time fixed by the master. The rule cannot be made to rest

upon, or the liability excused by reference to time if in fact the promise was the inducement upon which the servant acted. It will not do to hold, under such circumstances, that the promise was not made for the benefit of the servant, in the light of the rule that the master is charged with a primary duty of putting the servant to the performance of no work of an extra hazardous nature without warning him of the danger.

Nor does *Primley v. Elbe Lumber & Shingle Co.*, 53 Wash. 687, 102 Pac. 763, sustain appellants in their contentions. In that case the request was not made because of known or apprehended danger to the servant. But its object was to serve an entirely different purpose; to save "the loss of time, labor, and material." The case of *Showalter v. Fairbanks, Morse & Co.*, 88 Wis. 376, 60 N. W. 257, is relied on. This case was cited by this court in the *Primley* case, as sustaining the proposition, not there necessary to be decided, that a promise to remove a danger usually applies only to machinery, tools, and the like, which are dangerously defective, and not to ditches and tunnels, as suggested in that case and as is contended by counsel in this one. But in the *Showalter* case, the distinction between the rule there announced and the one applicable to the case at bar, if there be a distinction, is attempted to be drawn by the writer of the opinion. The court said:

"The evidence of the plaintiff is that he relied on the superintendent's assurance that the ditch was safe, in going back to work. He nowhere claims that he relied on the promise to brace up the ditch. There must be reliance on the promise to repair, in order to make such a promise of any avail as an excuse to the employee."

In this case the promise to timber is not denied. The question in all this class of cases is, was the promise the inducement to continue at work, and did the respondent act as a man of ordinary prudence in the light of all facts and

circumstances. The promise, the time of performance, the surrounding circumstances, and the act of the servant, must be considered; not one alone, but all; and when so considered, we think the jury in this case was amply justified in holding that respondent did not assume the risk.

It is insisted that the court so defined the terms "contributory negligence" and "assumption of risk," as to deprive appellants of the force of these definitions. It is unnecessary to discuss the definition of contributory negligence. There is no testimony tending to show that respondent was negligent in any degree. The definition would therefore be superfluous, and could not be held to be prejudicial. In defining assumed risk, the court said, "The word 'assumed' means that he took the chances of it." These words were used by the court in defining the issues made by the pleadings. While we think that the words complained of might well have been omitted, nevertheless they should not be held to be prejudicial to the appellants. The instructions as a whole fairly define assumption of risk and state the law of the case. The use of the words objected to would not call for a reversal, under *State v. Letica*, 61 Wash. 629, 112 Pac. 748; *Engelking v. Spokane*, 17 Wash. 272, 110 Pac. 25; *Hoseth v. Preston Mill Co.*, 49 Wash. 682, 96 Pac. 423, and *Johnson v. Northport Smelting & Refining Co.*, 50 Wash. 567, 97 Pac. 746.

Other objections to instructions are based on appellants' theory of the law, or upon an assumption of facts which in our judgment are not warranted by the testimony; as, for instance, that the rocks and earth were constantly falling from the roof of the tunnel in such quantities as to charge respondent with a knowledge of certain danger, and that the crack in the roof of the tunnel was constantly growing larger while respondent was working under it.

The argument of counsel being based upon an unsupported theory of the law, and upon facts which we find did not exist,

or had been decided against appellants by the jury, the further objections need not be discussed.

Judgment affirmed.

RUDKIN, CROW, and MORRIS, JJ., concur.