[No. 3373.]

## MERRITT v. HUMMER.

1. REAL ESTATE BROKER—*Authority.*  A broker authorized to sell the lands of his principal for cash cannot bind the principal by a contract which assumes to confer upon a third person an option, at his election, to purchase in the future.

2. DECEIT—*False Representations to Attorney Inducing Action on the Part of Client.*  A real estate broker, being in controversy with his principal as to a sale which he represents he has made of the principal's real estate, exhibits to the attorney of his principal a 'Listing Card,' authorizing him to sell the principal's lands described therein, and falsely represents to the attorney that the card bears the signature of the principal.  By this means he induces the attorney to advise the client that he is helpless, and so effects an adjustment grossly to the disadvantage of the principal.  His conduct amounts to an actionable deceit and he is answerable to the principal therefor.

3. WITNESS—*Examination of Party by His Adversary.*  When the defendant is called by the plaintiff, and cross-examined under sec. 7284, Rev. Stat., he is entitled to at once give testimony in his own behalf within the scope of such cross-examination.  His counsel is not at liberty to propose leading questions.

4.  APPEALS—*Harmless Error.* To deny to defendant's counsel the right to examine him in his own behalf· at the close of his cross-examination by plaintiff, under the statute, does not necessarily constitute reversible error, if, at a later stage of the trial he is permitted to testify at length as to the subject matter of the cross-examination—especially where no apparent prejudice has resulted.

5.  —— *Party Bound by Positions Taken Below.* The appellant will not be heard to urge in this court a variance between the pleadings and proofs of his adversary which was' not suggested below.

The pleading will be regarded as amended to correspond with the proofs.

And though the verdict for the appellee is manifestly less than should have been awarded, he will not be allowed a remand of the cause, with directions to the lower court to enter judgment for the proper amount, when he made no application for such relief in the court below.

6.  PLEADING—*Aider by Verdict.* After verdict, generality and obscurity in the complaint not objected to by demurrer or motion, will be disregarded where the facts so defectively alleged can be gathered with reasonable certainty from what is alleged.

*Appeal from Denver District Court.*  HON. HARRY C. RIDDLE, Judge.

Messrs. DOUD & FOWLER, and Mr. GOLDING FAIRFIELD, for appellant.

Messrs. THOMAS, BRYANT & MALBURN, for appellee.

CUNNINGHAM, J.

The facts, so far as we deem them important to a proper understanding of the controversy, are substantially as follows:  the defendant, a real estate agent in the city of Denver, arranged with the plaintiff, then residing in Victor, but who owned certain real estate within the city of Denver, to sell said real estate.  After some correspondence, and a

personal interview on the subject, defendant wrote the following letter to plaintiff:

"Dear Sir:

We have a customer at last to whom you may possibly sell your property. The price you gave us was $15,000 net. Is this absolutely the lowest and best you can do? How much cash will you require down?"

Plaintiff answered:

"I have yours of the 9th. I note what you say about my property. * * * The price will be strictly as I gave it to you when in Denver, $15,000 net to me. * * * If I sell at all, I shall want the money for other investments."

Later the defendant called plaintiff by telephone and said to him in substance, "I have sold your property for $15,000." Plaintiff at once demurred to the sale, and a personal interview followed, in which some contention occurred between the parties, the burden of which was that plaintiff felt that the property was worth more money, and that he preferred to make a settlement with the defendant, whereby defendant would receive a commission for his trouble, and the plaintiff might withdraw the property from the market, or at least from the hands of defendant. This proposition defendant strenuously objected to, contending that he had a right to sell the property on the terms he had sold it, and produced a contract which reads as follows:

"Denver, Colo., Jany. 8th, 1906.

"Received of Peter Scola the sum of one thousand Dollars, being part purchase price on the following described property in Arapahoe County, Colorado: Lots numbered twenty-three (23) and

twenty-four (24) in block numbered one hundred and ninety-seven (197) in East Denver.

Full consideration to be fifteen thousand five hundred dollars, Terms as follows: · One thousand dollars as above receipted for, and the balance of fourteen thousand five hundred dollars to be paid in cash on or before Feby. 8th, 1906. Deferred payments to be secured by note and deed of trust on said property. Good and sufficient warranty deed and abstract of title to be furnished.

If said payment of $14,500.00 is not made or tendered on or before said date, then this receipt to be void and of no effect, and both parties released from all obligations herein; and, in that event, the said $1,000 paid on this date is to be forfeited as liquidated damages.

In case title is found defective and can not be corrected within a reasonable time, then this deposit of $1,000 is to be returned, and this receipt shall be null and void. Property to be freed and cleared of all liens and assessments to date of transfer.

GEORGE A. HUMMER,

by E. W. Merritt, Agent."

Defendant tendered or offered plaintiff the $1000 which the above agreement states had been deposited with him, defendant, but plaintiff declined to receive same, at that time, but said he desired to take the advice of an attorney on the question of his liability. This he promptly did. The attorney consulted conferred with defendant, who, to show his authority or agency, exhibited the letter from Hummer, together with a listing card containing a description of the property, and authorizing Merritt to act as agent for the sale of the same, and

providing for ten days notice from Hummer to Merritt if the former desired to withdraw the property from the market. This card purported to be, and Merritt represented to plaintiff's attorney that it had been, signed by plaintiff. Defendant declined, in his conference with the attorney, to settle on any basis other than the consummation of the sale on the conditions named in the agreement above quoted, representing to the attorney, as he had done to plaintiff, that he had sold the property to an eastern man, and received $1000 on account; that the purchaser was so favorably impressed with the particular property that he would accept no other, nor consent to plaintiff's release. Defendant does not appear to have exhibited to the attorney the Scola agreement of January 8th, and whether the attorney ever saw it does not appear. Being convinced by defendant's representations that Hummer was bound, the attorney so advised him. As a result of his attorney's advice, and of further conference with Merritt, Hummer entered into the following agreement with Merritt, which, for the sake of brevity, we shall hereafter refer to as Exhibit F.:

"Denver, Colo., January 12, 1906.

"Received of E. W. Merritt the sum of Five Hundred Dollars, being part purchase price on the following described property in Arapahoe County, Colorado: Lots twenty-three (23) and twenty-four (24) in block numbered one hundred and ninety-seven (197) in East Denver. Full consideration to be Fifteen thousand and three hundred dollars, terms as follows: Five hundred dollars as above receipted for and the balance of Fourteen thousand and eight hundred dollars ($14,800.00) to be paid

in cash on or before thirty days after date hereof, January 12, 1906, or as soon thereafter as I can clear said property from all liens, loans and regular and special taxes. Deferred payments to be secured by note and deed of trust on said property. Good and sufficient warranty deed and abstract of title to be furnished, showing everything clear.

If said payment of $14,800.00 is not made or tendered on or before said date, or thereafter when title is clear, then this receipt to be void and of no effect, and both parties released from all obligations herein; and, in that event, the said $500.00 paid on this date is to be forfeited as liquidated damages.

In case title is found defective and cannot be corrected within a reasonable time, then this deposit of $500 is to be returned, and this receipt shall be null and void. I agree that the consideration in the deed may be any amount that the purchaser may desire and that I will deed to whom he may direct.

(Signed)   George A. Hummer,
(Signed)   E. W. Merritt.

Witness:

(Signed)   E. W. Merritt,
(Signed)   Robt. B. Rockwell.

Four days later, defendant sold the property to one Gallup for $18,000, paying plaintiff $15,300, less the $500 which he had paid him at the time of the execution of Exhibit F. Early in February, learning the amount which defendant had received for the property, plaintiff instituted this action to recover the difference between what defendant had received for the property, and what he had accounted to the plaintiff for, viz: $2700, with interest.

The contention of appellant is that the case must be reversed, (1) because the original agreement, evidenced by the letters above quoted, entitled defendant to whatever sum he might receive for the property over and above $15,000, and that under an agreement of this character, the defendant might lawfully become the purchaser of the property. (2) That if the defendant might not become the lawful purchaser of the property under the original contract, he had a clear right to purchase the same under the conditions of Exhibit F. (3) That even if plaintiff was induced to enter into the agreement known as Exhibit F. by false and fraudulent representations made to him at the time by defendant, (as plaintiff contends he was) under the pleadings, the plaintiff may not avoid said contract on the ground of fraud. The position of appellant with reference to Exhibit F is this: he, appellant, plead the said exhibit in his answer, which was met, not by a plea of confession and avoidance on the ground of fraud, but by a bare general denial. The evidence shows positively that Exhibit F. was entered into, hence defendant asserts that plaintiff is in no position to urge any defense whatever as against its binding force. (4) Defendant further contends that the complaint nowhere states that the defendant sold the property for $18,000. The allegation on this point reads as follows:

"On or about the 5th day of February, A. D. 1906, he for the first time learned that the actual consideration paid by the said Gallup to the said defendant Merritt for the said premises hereinabove described was the sum of $18,000 in cash, which the defendant well knew, but which he wil-

fully and fraudulently concealed from this plaintiff, and did wilfully, falsely and fraudulently deceive the plaintiff by representing as aforesaid the maximum price of said premises to be the said sum of $15,500." This, defendant says, tenders no material issue; that the complaint merely states what the plaintiff learned, and when he learned it, without alleging the facts. (5) Defendant further contends that the case should be reversed because the evidence does not support the verdict. The verdict is for $2,861.31. The defendant says that it should have been for $3076.20 or nothing. In other words, his contention is that since the difference between the amount for which the property actually sold and the amount which the defendant paid over to the plaintiff being $2700, and the interest thereon being $376.20, the verdict "is not in harmony with the instructions, and is not supported by the evidence, and is in violation of the instructions." In addition to the alleged imperfections of the complaint hereinabove pointed out, defendant contends further that the complaint does not state a cause of action. A general demurrer was filed by defendant, but withdrawn by him and an answer filed.

1. The so-called agreement with Scola (which we shall hereafter refer to as the Scola agreement) may be eliminated. It was unenforcible against plaintiff (1) because it was a myth. (2) Under it, Scola was not bound to purchase the property. It was at best nothing more than an option to purchase. Under it Scola had thirty days in which to determine whether he would take the property. Merritt had no authority to bind Hummer by giving an option, or selling the property otherwise than for cash.

There are other good and sufficient reasons, sounding in morals, and involving the relation of principal and agent, why the Scola contract was voidable, if not absolutely void, which need not be here recited. Assuming, but not deciding, that under the original arrangement Merritt had a right to buy the property himself, for a net price of $15,000, as he now contends, still, the Scola contract, (which Merritt asserts was really one between himself and Hummer, or in which at most Scola had only an indefinite interest), was for the reasons already pointed out, unenforcible. Hummer could not have compelled Scola or Merritt to take the property and pay him $15,000 therefor, at the end of the thirty days; much less could he have forced the immediate payment of that sum to him from Scola and Merritt, or either of them. It therefore follows that it was unenforcible against Hummer. Hence we have this situation: when Hummer came down from Cripple Creek, protesting that he did not want to dispose of the property at the price named in the Scola option, but preferred to pay Merritt his commission and withdraw the property from the market, he had in law a clear right to do so, (indeed, Merritt was not entitled to a commission at all) and we may assume that he would have done so but for the false representations as to the facts which defendant made to Hummer, and the mistaken conclusion of Hummer with reference to his legal situation, which error on his part, as to the law, was the result, in part, of misrepresentations as to facts made by Merritt, and the advice given him by his counsel, which misrepresentations, etc., we shall now point out.

The card exhibited by Merritt to the attorney

had not been signed by Hummer. There is abundant evidence in the record to warrant the jury in believing that in representing to plaintiff's attorney that plaintiff had signed the card, Merritt was guilty of intentional deception. We need not prolong this opinion by pointing out the evidence of defendant's duplicity in this respect. That the relations of principal and agent existed between the parties cannot be gainsaid. The fact that the commission as originally fixed was made to depend upon the price at which the property sold, did not absolve defendant from the application of the well-known rules of law governing principal and agent. By gross misrepresentations of the facts, defendant succeeded in deceiving plaintiff's attorney, and thus induced him to advise his client, the plaintiff, that he was helpless. Then, by threatening plaintiff with litigation, defendant succeeded in securing the contract, Exhibit F. Exhibit F. being thus obtained, defendant can claim no benefits under it, and the judgment of the trial court should not be disturbed, unless some technical defect in the pleading, or errors committed on the trial substantially prejudicing the rights of the defendant, makes a re-trial of the cause necessary.

2. Plaintiff's counsel called the defendant as a witness and examined him as upon cross examination, under Section 7284 R. S. At the conclusion of defendant's examination by plaintiff's counsel, his own counsel asked and was denied the privilege of examining him at that time, the trial court holding that the aforesaid statute gave the defendant no right to testify further until plaintiff had closed his case, and he, the defendant, had been regularly called to the stand in his own defense. This was error.

While the statute does not permit defendant's examination by his own counsel to proceed beyond the scope of his examination as conducted by his adversary, nor permit leading questions to be propounded to him by his counsel, it does not by its terms, nor by a proper construction, deny his right to at once give further testimony within the limit indicated. But, since the record discloses that defendant was later called to the stand and examined fully by his counsel upon the matters brought out by counsel for plaintiff when he was first examined, we are loath to reverse the judgment because of the error committed by the trial court in this behalf.

3. Let us next consider defendant's third contention, relative to the failure of plaintiff to reply fraud as to Exhibit F. There was abundant evidence offered by the plaintiff to establish, beyond all controversy, the fact that plaintiff was induced to enter into the agreement known as Exhibit F. through the false and fraudulent representations of defendant. On that point plaintiff himself gave the following testimony:

"When I signed that contract (meaning Exhibit F.) I relied on the statements that Mr. Merritt made to me over the telephone, that he made to me when I went to his office; that he had sold the property, and he had a deposit, and I thought that it must be true, and I took it for granted it was true, and I signed the contract rather than get into any litigation over the matter. In substance, Mr. Merritt said if I didn't sign this, did not make this contract, that I would be sued, I suppose for specific performance."

Much other testimony of a similar character was

given by the plaintiff. Not only did defendant, when this testimony was being given by plaintiff, fail to interpose an objection thereto, on the ground that it constituted a variance between the pleadings and the proof, but his counsel, on cross examination of plaintiff, brought out much additional evidence corroborating the testimony which we have already quoted. Neither at the close of plaintiff's testimony, nor at the close of all the evidence in the case, did the defendant call the trial court's attention specifically to the contention he makes here, viz., that there was a fatal variance between the pleadings and the proof. There could have been no question at the close of plaintiff's case but that Exhibit F. had been entered into between the parties, and that the allegation of the answer in that respect had been established beyond cavil. Further, we are unable to discover from the motion filed for a new trial, or the opinion of the trial judge rendered thereon (which appears in the bill of exceptions) that this defect in the pleadings, or the variance between the pleadings and the proof, was argued or called to the attention of the trial court. It is true that the defendant tendered and requested the following instruction:

"The court instructs the jury that *under the evidence* in this case the plaintiff cannot recover, and you are therefore directed to return the verdict for the defendant."

But this instruction, which was refused, does not at all present the question of variance between the pleadings and the proof, which is so vigorously urged in the brief, and so plausibly presented on oral argument. It will be noted that the instruction quoted asks for a verdict, "under the evidence".

While the assignment of errors may be technically sufficient to permit the defendant to urge the question of variance between the pleading and the proof, still we discover nothing in it indicating that the defendant, at the time he prepared the assignment of errors, had this defense in mind. Nothing with reference to the question is said in the opening brief of counsel. Having gone forward to trial and permitted what might be called a false or new issue to be presented by the evidence, without objection, or at least without apt objection, and defendant having himself introduced evidence tending to establish good faith in the matter of the execution of Exhibit F, he ought not now to be heard for the first time to urge a variance.

Sec. 84 Colo. Civil Code, and cases cited; Enc. Pl. & Pr. Vol. 22, p. 544; *Alkire v. Myers Lmbr. Co.* (Wash.), 106 Pac. 915; *Lang v. Crescent Coal Co.* (Wash.), 87 Pac. 261; *Denver etc. v. Ryan,* 17 Colo. 98-104.

In the Lang case, *supra,* the defendant, in pleading a contract requiring work therein provided for, to be done ''to the satisfaction of the mine superintendent of said party of the second part'', omitted to allege that the work sued upon had been so done. Commenting on this omission, the court says:

''Evidence was introduced tending to show that the work was done to the satisfaction of the superintendent, and as above stated, this was the principal issue tried in the case. *Upon this appeal, it is our duty to treat the complaint as amended, if necessary, to correspond with the facts proved.''*

The italics are ours. Under the authorities we have just cited, the contention urged by the defend-

ant that. the plaintiff nowhere alleged that the representations which were made by defendant to him, and upon which he relied, were false, is without merit, where, as in this case, no such objection was urged on the trial at any stage of the proceedings, and where the evidence clearly establishes the falsity of the representations.

4. The complaint is probably defective in that it fails to allege in direct terms that the property sold for $18,000, yet, taken as a whole; we think it is sufficient on this point, especially in view of the fact that this imperfection was not raised by demurrer or motion. Reading the whole complaint, we find that in paragraph 5, plaintiff admits the receipt of $500 from defendant, and in paragraph 6, that he received the balance of the $15,300, which it is alleged in paragraph 5 he was to receive, and in paragraph 9 it is alleged that the defendant retained $2700, therefore, it can be gathered with sufficient clearness that the defendant must have received a total of $18,000 for the property.

In *Richardson v. El Paso Cons. G. M. Co.*, 118 Pac. 983, Mr. Justice Gabbert thus announces the rule, which is clearly applicable to the matter we are here considering:

"An express averment of a fact is not necessary when from the complaint such fact can be inferred."

Moreover, no objection was raised on the trial to the proof that defendant had received $18,000, that is, no objection based upon the insufficiency of the pleadings.

5. Defendant's contention that the verdict is not supported by the evidence, and is contrary thereto, because either the verdict should have been in

favor of the defendant, or in favor of plaintiff for the full amount prayed for, we do not regard as meritorious. If error at all, it was in his favor. There seems to be authority supporting plaintiff's contention that we may properly remand the case with instructions that judgment for the full amount be entered in favor of plaintiff, but inasmuch as the plaintiff, who would benefit by such exercise of authority, has been derelict in not filing a motion in the court below, prior to the entering of the judgment, asking for such relief, we shall not do so.

We are persuaded that defendant's rights have not been seriously invaded by reason of the defective allegations of the complaint. It would seem apparent that he went forward to trial fairly well advised as to the issues he would have to meet.

The judgment of the trial court will be affirmed.

*Affirmed.*

WALLING, Judge, not participating.

Decided February 13, A. D. 1912. Rehearing denied April 8, A. D. 1912.