Hillsborough, }
May 3, 1927. }

ANTHONY SHURKUS *v.* GATE CITY FOUNDRY COMPANY.

*Doyle* v. *Doyle* (*Mr. Paul J. Doyle* orally), for the plaintiff.

*Lucier & Lucier* and *Timothy F. O'Connor* (*Mr. Alvin A. Lucier* orally), for the defendant.

SNOW, J. The defendant had accepted the provisions of Laws 1911, *c.* 163; P. L., *c.* 178. The plaintiff has waived the provisions for his benefit and elected to sue at common law. *Ib., s.* 4; *Bjork* v. *Company*, 79 N. H. 402, 404. He is, therefore, subject to the defense of the assumption of risk (*Cassidy* v. *Company*, 79 N. H. 427, 429), including the risk of injuries caused by the negligence of fellow-servants. *Hodges* v. *Company*, 81 N. H. 101. The plaintiff assumed such risks as he knew of and appreciated, or which would have been disclosed to him by the exercise of due care (*Cassidy* v. *Company, supra; Olgiati* v. *Company*, 80 N. H. 399, 402), and has the burden of proving that the injury arose from a risk which he did not assume. *Zajac* v. *Company*, 81 N. H. 257, 261.

The acts of negligence relied upon are (1) faulty construction of the premises in the narrowness of the space between the stove and the post, which was customarily used as a passageway by the moulders when carrying metal to and from the bull ladle, and (2) failure to maintain sufficient lights. It is conceded that the plaintiff was aware of the general danger attending the handling of molten metal, and his knowledge of both of the alleged defects affirmatively appears. But the plaintiff contends that the defense of the assumption of risk arising from the inadequacy of the lights was suspended by reason of a complaint thereof to the master and its promise to repair; and that his injury was a result of a combination of the faulty lights, the narrow passage, and the act of a fellow-servant, the danger of which combination he did not appreciate.

The foundry was equipped with five or six windows upon the north, three upon the east, one or two upon the west, and with three sky-

lights. The natural light was normally supplemented, when needed, by six or seven electric ceiling lights, and by wall lights over the moulders' forms. The accident occurred at 4:15 P.M., October 22, which was a cloudy day. The plaintiff's evidence tended to show that two of the skylights were partially obstructed, and that four of the six ceiling lights were out of commission or not lit. The alleged complaint was of the defective ceiling lights. The plaintiff testified, — "I spoke [to the boss] twice, once about two or three weeks before the accident, and the second time two days before the accident." "He say 'you stay I give you more money.'" "Q. . . . You spoke to him about them Friday? A. Yes sir. Q. What did he say? A. I say: 'ain't you going to fix the lights so I can see?' He say: 'I am busy, take care of them later.'" The accident occurred on the following Monday. The plaintiff further testified that he supposed the boss was going to fix them, and that he did not know whether or not he would have remained at work except for the promised repairs.

Doubt may well be expressed whether on this evidence it could be found either that the complaint and the promise to repair had reference to plaintiff's personal safety (*Bodwell* v. *Company*, 70 N. H. 390; Labatt, Master & Servant, ss. 1343, 1345; Bailey, Personal Injuries, s. 428; *Morden Frog & Crossing Works* v. *Fries*, 228 Ill. 246, 251; *Nickas* v. *Hines*, 174 Wis. 387, 390; *American &c. Co.* v. *Adams*, 137 Ky 414; *Primley* v. *Company*, 53 Wash. 687, 691; *Dunphrey* v. *Company*, 83 N. J. Law, 763, 768), or that he remained at work on the strength of the promise. *Bodwell* v. *Company, supra; Roy* v. *Hodge*, 74 N. H. 190, 191; *Sevigny* v. *Company*, 81 N. H. 311. But if these doubts were resolved in the plaintiff's favor, and his case otherwise brought within the exception to the general principles governing his assumption of the risks of his employment, he would fail for the want of evidence to sustain his fundamental premise that the alleged defect in the lights contributed to produce his injury. The plaintiff testified that when he had filled the moulder's ladle the moulder "lifted it up from the floor and started backing up," and, when going back of him and the post, "struck the post with his right elbow," spilling the iron. The moulder, called by the plaintiff, testified that he was walking backward when he hit the post, that he knew the post was there, that he did not hit it because it was dark, that he could have seen it but forgot it was there. Manifestly the defect in the lights was not a contributing cause of the plaintiff's injury.

That the plaintiff fully appreciated the danger of injury so far as the stove, post, and fellow-servant were contributing factors is

plainly disclosed by his own evidence. He testified that when the moulder backed past him he turned around and looked at him because he thought he might hit the post and spill the metal on him. While it could be found that this was the first time this moulder had passed behind him with metal, the plaintiff admitted that whenever men got behind him with molten metal, he always looked around at them and watched them so that he would not get burned. "Q. You say the distance between the post and the front of the stove was about thirty inches? A. About that. Q. And it was a pretty short space? A. Sure, it was a hard chance to go by. . . . Q. But you thought somebody might go through with some hot metal and spill some, because the space was short? A. Might, some time. Q. But you were looking around to see if they did? A. Sure, looking for myself. Q. Sure, they might hit the post and spill it on you? A. May be. Q. That was what you thought of, Anthony? A. Sure."

It is unimportant whether the conduct of the moulder was "careless," as the moulder admitted on cross-examination, or was "careful," as he testified on redirect; that is, it is immaterial whether the injury was an accident, or was the result of the carelessness of a fellow-servant. In either event, the plaintiff's knowledge of the danger, being equal to or greater than that of the master, it was a risk assumed by him. *Owen* v. *Elliot Hospital*, 82 N. H. 497.

It follows that the defendant's motion for a directed verdict should have been granted.

*Judgment for the defendant.*

BRANCH, J., did not sit: the others concurred.