Hillsborough,
Jan. 6, 1931.

DESIRE LEVESQUE *v.* AMERICAN BOX & LUMBER COMPANY.

*Cyprien J. Belanger, Robert W. Upton* and *Lawrence I. Duncan* (*Mr. Upton* orally), for the plaintiff.

*Wyman, Starr & Booth* (*Mr. Booth* orally), for the defendant.

BRANCH, J. - Two claims of negligence were advanced by the plaintiff in this case, (1) that the guard was structurally defective by reason of the manner in which its constituent blades or fingers were attached to the supporting bolt, and (2) that the guard was not properly assembled at the time of the accident. These two propositions require separate consideration.

There was ample basis in the testimony for a finding that there was great danger that cleats or other pieces of wood might be thrown back by the saws and that due care required the furnishing of a guard against this danger. By installing the guard in question the defendant recognized the force of this obligation. Clearly such a duty could be discharged only by using care to furnish a guard capable of stopping the missiles so thrown, and if the jury found, as it might, that the appliance actually furnished was so constructed as to permit an occasional cleat to come through, a conclusion that the guard was inade-

quate and that the defendant was negligent in furnishing it should be permissible. The doctrine of assumption of risk, however, precludes a recovery by the plaintiff upon this ground. His knowledge and experience are the decisive factors in this phase of the case.

The plaintiff had been employed in the defendant's factory for thirty-five years and had been "on [the] cleat job" over twenty-five years. At the time of the accident his duties were in part those of a foreman, although it did not appear that he bore that title. He testified that he "was taking care of the job, taking care of a few men"; that the number of men varied from four to six; that he "worked with them and showed them what to do"; that he "would tell them what to do and how to do it"; that he worked "all around" and "would take care of different saws" in his "territory," consisting of a "cutting saw; swing saw; sometimes a planer; a couple of gang rippers, a square saw." He also worked part of the time as an operator. "Sometimes," he said, "I operate, take the place of others, they go somewhere, and I keep job going until they come back . . . half of the time was working on the machine and the other half take care of the job." He worked on all the different machines and was thoroughly familiar with the danger that pieces of lumber may be kicked back with great force by any saw.

In addition to his duties of direction and operation it is plain that the plaintiff was also charged with a duty of inspection. The following admissions made by him upon cross-examination are conclusive upon this point. "Q. Was it part of your job when you changed the saws to look the machine over and see that everything was all right? A. I guess it was. . . . Q. That was part of your regular work, when you changed saws, to make an examination of these fingers to see if they were all right, and worked right? A. To look the machine over. Q. To look the machine over included looking over these fingers and see that they were all right? A. Yes, sir." The force of these admissions was intensified by his testimony in regard to the examinations of the guard which he made before the accident, which is hereinafter referred to.

The gang-saw in question had been used in the defendant's factory for about five years before the accident, and the plaintiff's testimony indicated his thorough acquaintance with its construction and operation. It was a part of his duty to change and adjust the saws and "to instruct men how to run this particular saw." When this machine came from the maker "there wasn't any guard that came with it." The plaintiff operated it at that time without a guard "just

to try it out, that is all," and the guard in question was soon after installed by the defendant's servants. Thereafter the plaintiff examined the guard and "knew how it was made." He knew that it "was made with a bolt going through the top of these fingers, . . . that these fingers were made of metal that were bent around and fit over the bolt," and that "those fingers were made in such a way that they would be loose on the bolt, so as to be sure to drop down on the table." He knew that the fingers could be tightened or loosened by moving the nuts on the end of the bolt and agreed that "anybody would know that, just to look at it."

More specifically the argument in support of plaintiff's claim that the guard was structurally defective is, that by bending the strap iron from which the blades or fingers were made around the supporting bolt, an elliptical hole was created, which necessarily resulted in a loose fit on the bolt, which in turn permitted a separation of the blades sufficient to allow the passage of a cleat between them. In other words, the danger of which the plaintiff complains is, that if the blades were loose a cleat might find its way through the guard, and upon the evidence there is no escape from the conclusion that he knew and appreciated the existence of this danger before the accident. He testified no less than five times that he had previously tested the blades of the guard to see if a cleat could come through.

In short, from the testimony of the plaintiff himself the conclusion is inevitable that he knew the amount of play between the blades of the guard was controlled by the nuts on the end of the bolt, realized that they might become loose and appreciated the danger which would result if this occurred. Nor is the situation altered by reason of the fact that he did not know the shape of the holes in the ends of the blades. Since he knew that looseness was likely to develop it is immaterial that he did not understand all the factors which tended to make that result probable. For an injury resulting from a risk which he knew and appreciated, the existing law will not permit him to recover from his employer. *Roy* v. *Hodge*, 74 N. H. 190; *Cronin* v. *Company*, 75 N. H. 319; *Fontaine* v. *Company*, 76 N. H. 163; *Zajac* v. *Company*, 81 N. H. 257; *Owen* v. *Hospital*, 82 N. H. 497; *Shurkus* v. *Company*, 83 N. H. 43. It follows that the issue of negligence above considered should have been withdrawn from the jury.

The plaintiff's second claim of negligence is that the indented blade which formed a part of the guard was misplaced at the time of the accident. The testimony in regard to the function and appropriate position of this blade was conflicting. The defendant's millwright

testified that it belonged at the extreme right end of the guard nearest the gauge which guided the course of the lumber toward the saw and that the indentation was designed to fit down over the top of the gauge. The plaintiff asserted that this finger was designed to occupy a position at the left of the assembly next to the wide blade, and that the indentation was intended to fit over the outer edge of the five inch planks which were customarily sawed on this machine, so that in this position it partially filled the space between the broad blade and the material which was being sawed.

The defendant argues that the millwright's statement in regard to the proper location of the indented blade must be erroneous because his idea of its function was demonstrably mistaken. It is said that when the machine was in operation the gauge could not come beyond the inside saw and hence could not reach the inside edge of the guard; from which it would follow that the indentation could never fit down over the top of the gauge. This argument is not entirely convincing, but it is unnecessary to pass upon its validity for the testimony would justify a finding that the indented finger occupied at the time of the accident neither of the positions above described.

The plaintiff testified early in the trial that when he was hurt this blade occupied the position at the left of the assembly which he asserted to be correct; that the cleat which caused his injury was "the last one, the one on the outside," and that it came through between the first and second narrow blades counting from the left. Toward the end of the trial, after the guard had been produced in court, he changed his testimony and asserted that at the time of the accident the indented finger was the second narrow one from the left, and that the cleat came through between the second and third blades. At no time did he change his definite testimony that it was the outside cleat which injured him. If the plaintiff's final description of the assembly were accepted as true a conclusion that the indented finger was misplaced would necessarily follow.

It is possible that the evidence would also permit a finding that this factor in the situation was unknown to the plaintiff. The defendant's millwright testified that he took the guard apart and straightened some of the fingers "a couple of days before he [the plaintiff] got hurt." At this time the witness was trying to testify in English but it was subsequently found necessary to use an interpreter in order to make sure that he understood the questions which were put to him. In the light of his other testimony it is extremely doubtful if, by the phrase "a couple of days," he intended to fix definitely the time when

he last repaired the guard before the accident, but the plaintiff is here entitled to the construction of the evidence which is most favorable to him. *Lyman* v. *Railroad*, 66 N. H. 200. The plaintiff testified that he himself never undertook to repair or adjust the guard, but that he examined it within two days of the accident and found it "perfect." In this state of the proof it might be found that the mill-wright assembled the blades in the position which they occupied at the time of the accident, that the plaintiff's last examination was made before the millwright did his work on the guard and hence that he did not know or have reason to know of the misplacement of the indented finger. The possibility of reaching this conclusion would not, however, be sufficient to take the plaintiff's case to the jury, for here too the doctrine of assumption of risk is fatal to his contention.

The plaintiff certainly cannot complain because the indented blade was not installed at the extreme right of the guard, since it was his testimony that it belonged on the left side next to the broad blade, and had previously occupied that position. Clearly he consented to work upon the machine with the guard thus assembled and assumed the risks incident thereto. This was the kind of a machine which he agreed to use and supposed he had. Nor can it be found that the risk of injury by a flying cleat was different in kind or greater in degree by reason of the fact that the indented finger was the second rather than the first from the broad blade. In either position the effect of the indentation was to increase the amount of separation between two of the narrow blades and thus increase the possibility that a cleat might come through between them. A careful examination of the testimony and of the guard itself, which was an exhibit, fails to disclose any basis for a finding that the risk of such an occurrence was any greater with the indented blade in the second rather than the first place. In fact there would appear to be considerably more danger that the outside cleat, which caused the plaintiff's injury, might find its way between the first and second blades arranged as the plaintiff would have them, than between the second and third blades arranged as he says they were at the time of the accident. If the indented blade were in the first position, the outside cleat coming back straight, as it naturally would according to the evidence, would inevitably strike the opening caused by the indentation. Some unusual combination of circumstances would be required to deflect it in such a way that it would strike between the second and third blades however they might be arranged.

We therefore conclude that the plaintiff was not entitled to go to

the jury upon either of the alleged grounds of negligence, and that the motion for a directed verdict should have been granted.

*Judgment for the defendant.*

All concurred.