[No. 9014.    Department Two.    November 29, 1910.]

ED. EASTERLY, *Respondent*, v. EATONVILLE LUMBER COMPANY, *Appellant*.[1]

MASTER AND SERVANT—PROMISE TO REPAIR—PLEADING.    The objection cannot be raised that a promise to repair was not made by defendant's vice principal, where the answer fails to deny allegations of the complaint that the employees making the promise were defendant's foreman and head millwright; and the evidence showed that they did make the promises.

SAME—PROMISE—CONTEMPLATION OF CONTINUANCE.    A promise to remedy an improper construction of a sawdust chute in a shingle mill which required increased subjection to danger in releasing the sawdust, must have been made in contemplation of the operator's continuance at work, where there was nothing said about abandoning the machine or permitting it to remain idle.

[1]Reported in 111 Pac. 876.

SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. The negligence of a shingle weaver in releasing sawdust in a chute near the saw with a short stick, after a promise by the master to repair the place, is for the jury, where that was the usual method.

APPEAL—REVIEW—WAIVER OF OBJECTION. The finding of a jury upon an issue, under proper instructions framed by the appellant, is conclusive and precludes objection that the issue should have been determined by the court.

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. A shingle weaver is not guilty of contributory negligence, as a matter of law, in releasing sawdust in a chute without stopping the saw, where it was not usual to do so, and would have consumed much time, and it appears that he used a short stick for the purpose according to the usual method, and only did so for a reasonable time after objection and promise to repair.

APPEAL—REVIEW—VERDICT. The verdict of a jury upon conflicting evidence is conclusive on appeal.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $2,750 is not excessive, where a shingle weaver, 24 years of age, lost two fingers and sustained an injury to his thumb, impairing his earning capacity to the extent of at least fifty cents a day, and suffered much pain and inconvenience.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered December 18, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a shingle weaver in a shingle mill.    Affirmed.

*Hudson & Holt* (*Chas. Bedford*, of counsel), for appellant.

*Govnor Teats, Hugo Metzler,* and *Leo Teats,* for respondent.

CROW, J.—Action by Ed. Easterly against Eatonville Lumber Company, a corporation, to recover damages for personal injuries.    From a judgment in his favor the defendant has appealed.

Appellant's controlling assignment is that the trial court erred in denying its motion for a nonsuit, and its motion for a directed verdict.

The appellant owned and operated a shingle mill in Pierce county, in which it installed four upright shingle machines, only three of which had been used prior to respondent's employment. The respondent, an experienced shingle weaver, was employed by appellant to work upon the fourth machine. Below and near the saw a chute was installed to carry dust to a a conveyor below. Respondent introduced evidence to show, that this chute inclined in the wrong direction; that, by reason of its improper construction, dust frequently accumulated and clogged it below and near the saw; that it then became necessary for respondent to push the accumulated dust into the chute, so that it could pass to the conveyor; that he did this with a short stick or piece of shingle, while the saw was in motion, a method usually employed in the mill; that he complained to appellant's foreman and head millwright of the improper construction of the chute, telling them it caused sawdust to accumulate, requiring its frequent removal, and suggesting a method by which it could be changed so as to avoid further trouble; that they promised to make the change; that relying upon such promise, he continued work under the existing conditions; that shortly thereafter, while he was attempting to release accumulated dust, the saw struck the piece of shingle he was using, causing his hand to be suddenly drawn against the saw and injured, and that appellant was negligent in failing to furnish him reasonably safe machinery with which to work.

In support of its assignments of error, the appellant first contends that the alleged promise to repair was not made by any vice principal or other person having authority. Under our construction of the pleadings, it is in effect conceded that Al Cook and Harry Morgan, to whom respondent complained, were appellant's foreman and head millwright. The complaint alleges that respondent "thereupon complained to the foreman, Al Cook, who thereupon promised him that he would arrange and adjust the same [the chute] so that it would not pack sawdust, and that plaintiff would not be required to re-

move the sawdust." Similar allegations were made as to "the head millwright Harry Morgan." The answer contained no denial that Al Cook was appellant's foreman or that Harry Morgan was its head millwright. As to Cook, it says: "Defendant denies that the plaintiff complained to the foreman Al Cook and denies that the said foreman Al Cook promised the plaintiff that he would arrange and adjust the conveyer." While this language amounts to a denial of any complaint by respondent, or any promise by Cook, it does not deny that Cook was foreman. It rather infers that he was the foreman by describing and alluding to him as such. We think it apparent that Cook was appellant's foreman, that Morgan was its head millwright, and that respondent's evidence, which on the motion for a directed verdict must be accepted as true, was sufficient to sustain a finding that he did complain to them, that they did promise to make the repairs, and that he continued work, relying on such promise.

Appellant further contends it does not appear from the evidence that the foreman or millwright requested respondent to continue work, or that they knew he was using the dangerous method of releasing the dust by using a short stick or piece of shingle, near the moving saw; that nothing was said between them and respondent relative to the dangers to which he was subjected, but that his complaint had reference only to the alleged improper construction of the chute. This is a technical contention, without substantial merit. There was evidence that all shingle weavers in the mill constantly used the same method for releasing accumulated dust in a chute in front of a saw, and that the respondent, by reason of the improper construction of the chute, was required to remove it much more frequently, subjecting him to greater danger. The foreman, who was constantly about the mill, must have known these facts. He and the millwright knew the respondent continued his work, and must have assumed that he continued it in the usual manner. There is no contention that he was ordered or expected to abandon the machine or permit it to

remain idle.  Respondent's evidence was that he continued work relying solely upon the promise made, and that within a brief period thereafter, while so working, he was injured. Under such circumstances, the promise must have been made in contemplation of continued work by respondent for a reasonable time and under existing conditions, until the change could be made.

Appellant further contends that the method of releasing the sawdust with a piece of shingle near the moving saw was very dangerous, a fact known to respondent, and that it was the duty of the court to adjudge him guilty of contributory negligence as a matter of law, in continuing work, knowing of such imminent danger.  Whether the method was so imminently and certainly dangerous as not to be adopted by an employee, acting with ordinary prudence and caution, was in the light of the evidence as to the usual method of work, the promise to repair, and respondent's reliance thereon, a question for the determination of the jury under proper instructions from the court.  The trial judge, at appellant's request, did instruct as follows:

"You are instructed, gentlemen of the jury, that the plaintiff cannot recover in this action without showing that the defendant, through one of its authorized agents, promised the plaintiff to repair the chute or conveyor in such a manner that the sawdust would not accumulate so as to render its removal necessary, and that the complaint was made by plaintiff for the purpose of providing for his safety while using this saw, and that the promise was made with a view to his safety, and that the said plaintiff continued to work at the saw relying upon the fulfillment of the said promise, and that but for the said promise he would not have continued to do so; and even if you find these facts to be true, if you also believe from a fair preponderance of the evidence that the danger of removing the sawdust in the manner in which the plaintiff undertook to do so was so imminent and threatening that a reasonably prudent man would not have undertaken to do it, and that the manner in which it was done amounted to recklessness, you will find for the defendant."

Under this instruction, framed by appellant's attorneys, the jury found for the respondent, and their verdict is conclusive on the issue involved.

Appellant further contends that the respondent was guilty of contributory negligence in attempting to remove the dust while the saw was in motion; that he was provided with proper appliances to stop the saw without disturbing any other moving machine or other portion of the mill; that a safe way was thus provided for him to remove the dust; that instead of adopting the same, he voluntarily elected the dangerous and unsafe plan of using a piece of shingle near the moving saw, and that in so doing he was, as a matter of law, guilty of such contributory negligence as to preclude any recovery. There was evidence that the sawdust clogged the chute frequently and repeatedly, especially at this particular machine; that to stop the saw in each instance would consume much time; that appellant's employees were working by the piece; that the method adopted by respondent was the usual one adopted by all the employees in the mill, and that ordinarily the machine was stopped only when it became necessary to change a dull saw for a sharp one.

No two actions are identical. Each must be considered in the light of its own facts and environment, and be determined on correct legal principles. Relative to the effect of the promise made by appellant's foreman and head millwright, respondent cites the case of *Shea v. Seattle Lum. Co.*, 47 Wash. 70, 91 Pac. 623, but appellant, attempting to distinguish its facts, insists that it is not pertinent. The reason appellant's foreman and head millwright promised to change the chute was that improper construction had caused it to become clogged more frequently than if properly constructed, thereby subjecting respondent to a greater degree of danger. Manifestly their promise contemplated relief from this condition. They must have realized that was what respondent desired. No other incentive existed for the complaint and request made by him. They must also have been aware of the

fact that respondent continued his work in the same manner, unless they failed to observe the customary actions of respondent and other employees, a flagrant neglect of duty not disclosed by the evidence. Their promise, if made at all, was certainly made in contemplation of a continuance of work by respondent for such a reasonable length of time as would be required to change the chute. The substantial effect of respondent's evidence was that, exercising reasonable care, he so continued relying on the promise made. This being true, there is no such material distinction in the facts as to prevent the *Shea* case from being applicable. We there said:

"It is elementary law that it is the duty of a master to provide his servant with reasonably safe machinery, tools, and appliances with which to perform the work required of him, and to also keep the same in reasonably safe condition. Whether the stick used met this requirement was a question of fact to be submitted to the jury. It is contended by the appellant that the respondent had just as much knowledge of the fact that the stick was a dangerous and unsafe appliance as had the master, and that the respondent therefore assumed the risk of all dangers which might result from its use. This would be true had the respondent continued its use without objection or complaint after he actually appreciated the danger, but he only did so for a reasonable time while relying on the promise of the master. After appellant's foreman had made this promise, it assumed all risk of danger arising from respondent's careful use of the unsafe appliance during such reasonable time as might thereafter be necessary to provide the iron rod."

The fact that the edger and saw were not in the control of Shea was mentioned by this court, but calling attention to other material facts, we further said:

"The evidence further indicates that the custom in appellant's mill was to clean the chute while the edger was running. It is not shown that the machinery was ever stopped, or that the saws were moved by respondent or any other employee, at any time in the history of the mill for the purpose of cleaning the chute. The fact that a long stick was provided in-

dicates that it was to be used while the machinery was in motion.  The foreman saw and permitted respondent to use the stick without stopping the edger or changing the saws, and even after the accident an iron bar was provided, showing that the appellant still intended to permit the cleaning of the chute without stopping the edger or moving the saws.  The evidence discloses no rule of the mill for doing the work in any other manner.  These facts clearly distinguish this case from those cited by the appellant.  Courts do not hold plaintiffs guilty of contributory negligence, as a matter of law, unless the circumstances are such that reasonable men may not differ as to the existence of such contributory negligence. The question of the existence or nonexistence of contributory negligence upon the part of the respondent was, under the evidence before us, an issue of fact to be submitted to the jury."

Under the facts and circumstances disclosed by the evidence now before us, the question of respondent's alleged contributory negligence was for the jury.  The trial judge instructed as follows:

"You are instructed, gentlemen of the jury, that if you believe from a fair preponderance of the evidence in this case that a reasonably prudent man would not have undertaken to punch out the sawdust in the manner plaintiff was doing at the time of his accident, but that such a man would have used the lever and thrown off the tightener, and stopped the saw before doing it, you will find for the defendant."

Under this instruction and the evidence, the jury found for the respondent.  The question involved was for their exclusive determination, and their verdict cannot be disturbed.

It is contended that the jury awarded excessive damages. The respondent, an experienced shingle weaver, twenty-four years of age, sustained an injury to his thumb and lost portions of two fingers, which impaired his earning capacity to the extent of at least fifty cents per day.  His life expectancy was about thirty-eight years.  He has suffered much pain and inconvenience.  The jury awarded $2,750, which we regard as abundant compensation.  We do not, however, con-

clude that it is so flagrantly excessive as to justify any interference by this court.

The judgment is affirmed.

RUDKIN, C. J., DUNBAR, CHADWICK, and MORRIS, JJ., concur.