[No. 15404. Department Two. January 2, 1920.]

WILLIAM JOHNSON, *Respondent*, v. NORTH COAST STEVEDORING COMPANY, *Appellant*.[1]

TRIAL (55)—TAKING CASE FROM JURY—SUFFICIENCY OF EVIDENCE. On defendant's motion for nonsuit, the evidence must be viewed in the light most favorable to the plaintiff, who is not bound by unfavorable testimony of one of his own witnesses.

MASTER AND SERVANT (101) — ASSUMPTION OF RISK — PROMISE TO REPAIR—LIABILITY. In order to recover for personal injuries sustained by a servant while working upon a dangerous floor covered with oil, the servant must prove (1) his complaint to the foreman; (2) assurances that the conditions would be remedied; (3) reliance on the assurances; (4) injury before a reasonable time for making the repairs; and (5) that the risks were not so imminent as to require him to stop work notwithstanding the promise; this rule applying to the place of work as well as to the machinery.

SAME (101, 161)—ASSUMPTION OF RISKS—PROMISE TO REPAIR—RELIANCE UPON—EVIDENCE—SUFFICIENCY. The evidence supports a finding that plaintiff, injured upon a floor covered with oil, relied upon the foreman's promise to obtain sawdust, when it appears that for two hours repeated complaints were made, the foreman made several attempts to get the sawdust and gave assurances that he would do so, which assurances were at no time withdrawn.

DAMAGES (84, 88)—EXCESSIVE DAMAGES—INJURY TO LEG. A verdict for $5,000 for injuries to a stevedore are not excessive, where he was seriously bruised, his knee was broken and his kidneys injured and he suffered much pain in a hospital for seven weeks, it

[1]Reported in 186 Pac. 663.

would probably be a year before he could perform his usual work, he might not be able to do heavy work, and his doctor's bills came to several hundred dollars.

Appeal from a judgment of the superior court for King county, Allen, J., entered February 18, 1919, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a longshoreman in loading a vessel. Affirmed.

*Roberts & Skeel, John T. Hunt,* and *L. B. Schwellenbach,* for appellant.

*Henry W. Pennock* and *James R. Gates,* for respondent.

BRIDGES, J.—Suit for damages on account of personal injuries. The complaint alleged that the defendant was engaged in the stevedoring business, and that, on the 20th of May, 1918, it undertook to load the steamship "Takai," at the Union Pacific Dock, Seattle; that, prior to such time, the vessel had been employed in transporting soya bean oil, and by reason of the breaking of certain oil containers, the floor in the hold of the vessel had become covered with oil; that the plaintiff was employed by the defendant to assist in loading the vessel, and that he commenced such work at about ten o'clock in the forenoon; that the cargo to be loaded consisted of steel and iron bars; that, as soon as plaintiff and the other members of the loading crew began stowing away bars in the hold of the vessel, plaintiff discovered that the floor was slippery and more or less dangerous to work upon, such condition being caused by the oil which had soaked into the wood and which lay on the surface thereof; that plaintiff, immediately after going to work, called the attention of the foreman in charge of such operations to the danger of the slippery floor,

and protested against working without a covering of sawdust; that such foreman then promised plaintiff that sawdust would be procured as soon as possible and spread upon the floor; that, after plaintiff had worked about an hour, a bundle of bars was lowered through the hatchway and held suspended above the floor while plaintiff and other members of the crew swung it back and forth for the purpose of steering it behind certain stanchions near the hatchway; that plaintiff was pulling the bars at one end, while the remainder of the crew was pushing at the other end; that, when the bars were in position where it was desired to drop them, signal was given to the winchman, who dropped the bars, and that plaintiff, because of the slippery floor, slipped as they were being dropped, and they fell on him, causing serious injury.

The defendant denied generally all of the allegations of the complaint, and pleaded assumption of risk and contributory negligence.

Plaintiff's testimony followed closely the allegations of his complaint. In addition, it tended to show that plaintiff was an experienced stevedore; that he had helped unload the vessel and knew of its slippery floors before he commenced the work at which he was injured; that there were five other men working in the hold with him while loading; that the bars were about twenty feet long; that, after he had been working a little less than two hours, he was injured; that a sling load of bars was being lowered into the hold of the vessel and the plaintiff was pulling it and his co-laborers were pushing it, and that, when it reached the desired place, they gave the winchman a signal to drop the bundle, and just as the load was being suddenly dropped, the plaintiff slipped and fell under the bars and was injured. There was testimony tending to show that, before plaintiff commenced the work, he

complained to the foreman, or "boss," of the slippery condition of the floor and asked for sawdust; that, several times thereafter, he and his fellow-workmen complained and asked for sawdust; that the foreman, or "boss," had told them more than once that he would try to get some sawdust. Hereinafter we will more particularly discuss the testimony with reference to the alleged promise of the foreman to get the sawdust.

The defendant introduced no testimony other than that of one expert witness as to the extent of the plaintiff's injury. When plaintiff rested his case, defendant moved for nonsuit, which motion was denied. When the testimony was all in, the defendant moved for a directed verdict, which was denied. There was a verdict for $5,000. Defendant's motion for judgment notwithstanding the verdict was denied, as was also its motion for a new trial. From judgment entered on the verdict, this appeal is taken.

The chief points raised by appellant are, that the plaintiff assumed the risk; that there was no promise to repair, and if there were such promise, plaintiff did not rely upon it; and, finally, that the plaintiff was guilty of contributory negligence.

For the purpose of this discussion, it may be conceded that respondent knew of the slippery condition of the floor and assumed all of the risk incident to working thereon and cannot recover, unless he complained of such conditions and received assurances that the same would be corrected, and that he continued to work relying upon such assurances. Appellant contends that the testimony fails to show any such assurance. In determining this question we are required to review the plaintiff's evidence in the light most favorable to him. In the case of *Shea v. Seattle Lumber Co.*, 47 Wash. 70, 91 Pac. 623, this court said:

"The sole question presented is whether the evidence sustained the verdict and judgment. In passing on this question we must consider the evidence in the light most favorable to respondent."

In the case of *Harris v. Saunders,* 108 Wash. 195, 182 Pac. 949, this court, in discussing a question of like character, said:

"It must be remembered, also, that, in passing upon this question, the appellant was entitled to have considered, where the evidence is contradictory, or where favorable or unfavorable inferences can be drawn from the evidence, that part of the evidence most favorable to his contention. It is not the rule that a litigant is bound by the unfavorable testimony of a witness, even though that witness may be one he himself produces; that is to say, if a plaintiff produces evidence tending to support his allegations and then introduces a witness who contradicts his former evidence, he may still go to the jury on the question, as the contrary rule would always place him at the mercy of a designing witness."

The rule laid down by the authorities generally, and approved by the many decisions of this court, is that, where an employee goes to work at a place that is, or with machinery and implements which are, defective or dangerous, and he complains to the master of such condition, and gives him to understand that he will quit work unless such condition is remedied, and the master gives the servant assurances that such condition will be remedied, the latter may continue at his labor for such reasonable length of time as it would appear proper for the repair to be made, or the promise of the master to be complied with, provided, he continues at such work relying upon the promises or assurances, and that, under these conditions, the workman will not be held to have assumed the risk. Nor is it necessary that the workman should

say in express words that he will stop work unless the repairs are made, but it is sufficient if his words and conduct are such as to indicate to the employer that such was his intention; nor is it necessary that the employer should make any absolute or express promise or assurance of repair or to remedy such defect, but such promise or assurance may be implied from the words and acts of the employer.

Mr. Labatt, in his work on Master and Servant, vol. 4 (2d ed.), § 1343, states the rule in the following words:

"In order to entitle the servant to recover, the master or his representative must have said something which would reasonably be construed as a stipulation to prevent or to remedy the dangerous conditions in question. But the mere fact that no formal promise was given is not sufficient to exclude the inference of an agreement by the master to furnish or restore normally safe conditions. Any acts or expressions by which the servant gives the proper agent of the employer to understand that he is unwilling to continue in the employment, unless the cause of the danger is removed, constitute a sufficient complaint; and any acts or expressions by which such agent gives the servant to understand that the cause of the danger will be removed, constitute a sufficient promise."

This court, in the case of *Alkire v. Myers Lumber Co.*, 57 Wash. 300, 106 Pac. 915, quoted with approval the rule as announced in the last sentence of the foregoing statement. A partial list of the decisions of this court dealing with this question is as follows: *Carlson v. Wilkeson Coal & Coke Co.*, 19 Wash. 473, 53 Pac. 725; *Johnson v. Anderson etc. Lumber Co.*, 31 Wash. 554, 72 Pac. 107; *Keating v. Pacific Steam Whaling Co.*, 21 Wash. 415, 58 Pac. 224; *Crooker v. Pacific Lounge & Mattress Co.*, 29 Wash. 30, 69 Pac. 359; *Easterly v. Eatonville Lumber Co.*, 60 Wash. 647,

111 Pac. 876; *Leeson v. Saw-Mill Phoenix,* 41 Wash. 423, 83 Pac. 891; *Cook v. Pittock & Leadbetter Lumber Co.,* 51 Wash. 316, 98 Pac. 1130; *Morgan v. Rainier Beach Lumber Co.,* 51 Wash. 335, 98 Pac. 1120, 22 L. R. A. (N. S.) 472; *Alkire v. Myers Lumber Co.,* above; *Beseloff v. Strandberg,* 62 Wash. 36, 113 Pac. 250; *Terry v. Merrill & Ring Logging Co.,* 65 Wash. 225, 118 Pac. 27; *Lundgren v. Pacific Coast Steamship Co.,* 103 Wash. 81, 173 Pac. 1023; *Tatum v. Marsh Mines Consolidated,* 108 Wash. 367, 184 Pac. 628, 187 Pac. 410.

From these authorities it would appear that it was necessary for the plaintiff to prove, in order to recover, the following: (1) that he complained to the foreman of the condition of the floor; (2) that the foreman gave assurances that such conditions would be remedied; (3) that the plaintiff relied upon such assurances; (4) that he was injured before a reasonable time had expired within which the repair could have been done; and (5) that the risks resulting from the condition of the floor were not so imminent as to require the plaintiff to stop work, notwithstanding the promise to repair. Let us see whether the plaintiff's testimony brought him within the rules we have announced.

It may fairly be stated that the plaintiff's testimony shows that he and his fellow-workmen, during the two hours they were loading the vessel, several times complained to the foreman about the slippery condition of the floor and demanded sawdust in order to remedy the defect; that at least two or three times the foreman, in answer to these demands, stated: "I will go see if I can find any sawdust," or, "I will go and see what I can do," or, "I will go and see if I can get some"; that, at these several times, the foreman left the vessel and tried to get some sawdust, and

reported back that he had not succeeded in getting any. However, he procured a barrel of wheat chaff, and this was spread upon the slippery floor, but the plaintiff and his fellow-workmen thereafter continued to complain and to demand sawdust. But appellant contends that the testimony shows that the foreman finally said to the plaintiff and his co-workers that he could not get any sawdust, and that the wheat chaff was all he could get, and that thereafter he made no further promise or assurance of sawdust and ceased his effort in that regard. If this position is supported by the testimony, then the plaintiff assumed the risk, because the promise itself would have ceased and plaintiff could not have continued his work in reliance upon any promise to repair. The direct and cross-examination of the foreman Riggle supports appellant's contention, but on redirect examination he said: "After I brought the chaff they said 'Get some sawdust. This ain't no good.' And I said 'I'm trying to get some. Ain't I doing the best I can?' I again went out to get some sawdust." The testimony of plaintiff's witness Quartman shows clearly that Riggle, the foreman, at no time indicated to the workmen that he had ceased trying to get the sawdust, or that he would not furnish it to them. The testimony of the plaintiff's witness Whitney was certainly to the effect that the foreman finally told the workmen that he could not get any sawdust, and led them to believe that he would not make any further efforts in that direction. The plaintiff testified on that question as follows:

"Before I went to work I made complaint to Mr. Riggle (the foreman) I wanted some sawdust. It was not fit to work down there. He said he would try to get some. He went away and came back and said he didn't have any then; it was over in No. 2. We

had to have it and he went back again and brought some wheat chaff. After the wheat chaff was brought down I made complaint for some sawdust and he said he would try to get some. When he came back he said 'I cannot get any at the present time.' After Mr. Riggle said he tried to get some sawdust he went away, but I don't know where he went. Every time we saw Riggle we made complaint for sawdust—I don't know how many times, about eight or nine, or ten times probably."

Taking the plaintiff's testimony, as we must, in the light most favorable to him, it must be admitted that there was some testimony, at least, to show that the plaintiff not only made complaint and demand for sawdust, but that the foreman, by his words and conduct, gave assurances he would get the sawdust, and that he at no time withdrew such assurances, or ceased his effort to get the sawdust, and that the plaintiff at all times had a right to continue with his work in the belief and understanding that the sawdust would be forthcoming. There was ample testimony on these questions to carry the case to the jury.

Appellant's contention that the rule relieving an employee from assumption of risk has no application to the place of employment, but applies only to machinery or other appliances, cannot be upheld. There is no reason why it should not apply to the place of work as well as to the machinery with which the work is being done, and this court has so held.

In the case of *Terry v. Merrill & Ring Logging Co.,* 65 Wash. 225, 118 Pac. 27, we said:

"The appellant contends that the rule which absolves an employee from assumption of risk does not apply to the place of employment, but only to cases where tools, machinery, or other appliances are used, and the promise is to repair or adjust such appliances. While a majority of the reported cases arose upon a

promise to remedy defects in tools or machinery, the rule must be logically held to apply to a promise to remedy defects in the place of work as well as defects in tools or machinery. The logical basis of the rule, as it seems to us, is found in an implied contract. . . . But whatever the basis of the rule, this court has stated it broadly as applying to the place of work as well as to appliances, and we think that position sound.''

To the same effect are the following cases: *Morgan v. Rainier Beach Lumber Co.* and *Beseloff v. Strandberg, supra.*

Appellant further contends that the respondent was guilty of contributory negligence. We have carefully considered the argument in this regard, and without following it in detail, we are content to say that the court could not hold, as a matter of law, that the plaintiff was guilty of contributory negligence. The case was properly sent to the jury.

What we have already said is sufficient answer to appellant's contention that the court erred in giving certain of its instructions and in refusing to give certain requested instructions. Neither do we find any merit in appellant's contention that certain testimony with reference to wages of the plaintiff was erroneously received.

The verdict was for $5,000, which, it is contended, was excessive. The testimony shows that the respondent's right knee was broken, and that his left leg was cut and considerably injured; that his head was also bruised; that he was in the hospital from the 20th of May to the 8th of July; that, during a considerable portion of that period, he suffered a great deal of pain; that his kidneys were injured, also causing suffering; that while there is a good union of the broken leg, yet, at the time of the trial in October following his injury, plaintiff had not regained the full use of it, and his

kidneys continued to give him some trouble. His attending physician testified that he believed the kidney trouble was not particularly serious, and that it was impossible to tell whether or not the injury to the right leg was permanent, although he inclined to the view that it was not; that it would probably be a year from the time of the injury before the respondent would be able to perform his usual work, and that he might not even then be able to do heavy work. There was an expense of several hundred dollars for doctor and hospital bills. The trial court, who saw the plaintiff and his injuries, refused to reduce the verdict. Under these circumstances, and under such showing of injury, we cannot hold that the verdict was excessive.

The appellant has raised two or three other questions which we have duly considered, but we do not find merit in them.

Judgment affirmed.

HOLCOMB, C. J., MOUNT, TOLMAN, and FULLERTON, JJ., concur.