[No. 22667. Department Two. March 16, 1931.]

W. T. SAUNDERS, *Appellant,* v. LONGVIEW, PORTLAND & NORTHERN RAILWAY COMPANY, *Respondent.*[1]

[1]Reported in 296 Pac. 835.

*Edgar P. Reid* and *Jerard Imus,* for appellant.
*Pearson & Potts,* for respondent.

BEELER, J.—Plaintiff, while in the employ of the defendant, stepped on a small piece of pipe ten inches in length and one-half inch in diameter, and was injured, and thereafter brought this action to recover damages. The cause was tried to the court and jury, resulting in a verdict in his favor in the sum of $980. The defendant moved for judgment notwithstanding the verdict, which motion was sustained, and the court dismissed plaintiff's action and entered judgment for the defendant. From this judgment the plaintiff has appealed.

Parenthetically, it may be said that the principle of contributory negligence is not involved, because, respondent being engaged in interstate as well as intrastate commerce, the doctrine of comparative negligence under the Federal employers liability act controls,— subject, of course, to the affirmative defenses interposed by the respondent, which we shall hereinafter consider.

The sole question presented on this appeal is whether the evidence is sufficient to sustain the verdict. In discussing this question we shall consider the evidence in the light most favorable to appellant. The facts are:

Respondent, a corporation engaged in interstate and intrastate commerce, prior to and on April 27, 1928, maintained a repair shop, store room, and blacksmith shop, all being in one large room about seventy feet in width and one hundred twenty feet in length, at

Longview, Washington. The blacksmith shop was situated in one corner of this large room, in which respondent maintained a stationary forge, and which it used to repair its railway equipment. Two spur tracks extend into this room.

Shortly prior to April 27, appellant complained to a Mr. Hoppel, general foreman in charge of the repair shop and storeroom, as well as the railway yard, of rubbish and debris around and about the stationary forge and blacksmith shop, and requested that the floor be kept clean as a protection to him, contending that the nature of his employment at the forge required him to keep his eyes focused on the heat and fire while welding and repairing the railway equipment, so as to protect it from becoming overheated, and that this constant watching and care rendered it difficult for him to readily see refuse matters scattered and littered about the floor. Accordingly, the yard foreman removed all rubbish and debris and promised to keep the place clean.

On the morning of April 27, appellant, as foreman in charge of the blacksmith shop, with the assistance of a crew of three helpers, began to repair a quantity of iron truss rods, which respondent, some time during the previous night, had dumped or placed on a pile alongside one of its spur tracks, at a point approximately eighty feet from the stationary forge. Observing the distance the rods were from the stationary forge, appellant, voluntarily and without direction from anyone, moved a portable forge, which was about the premises, onto one of the spur tracks and within a distance of eight or ten feet from the truss rods. These rods were of considerable length and weighed from 450 to 600 pounds each. Appellant and his three helpers would pick up a rod, carry it to the portable forge, repair it, and then lay it on the ground along-

side the spur track opposite the pile of unrepaired rods.

They proceeded with the work throughout the day, and at about four-thirty in the afternoon had repaired twenty-one rods, and while in the act of carrying the twenty-second rod, which weighed approximately six hundred pounds, to the portable forge, appellant stepped upon a small piece of pipe about ten inches in length and one-half inch in diameter, and, as a result, he lost his foothold, was thrown forward and injured.

Appellant admits he was the foreman of the blacksmith shop and had charge of his three helpers; admits that, on the morning of April 27, in order to facilitate in the work, he moved the portable forge over to where the truss rods were piled; admits he selected the spot where he placed the forge without direction from Mr. Hoppel or any other person; admits this was not the place where he ordinarily performed his work; admits that the pipe was lying in plain sight and might have been seen; admits it was on top of one of the ties between the rails of one of the spur tracks, and that it rolled because of the hard surface on which it was lying; admits that no one detected the pipe prior to the accident. He offered no testimony to show how long the pipe had been there or who had placed it there.

Under these facts, the question presented is: Did the trial court err in dismissing appellant's action and entering judgment against him? We think not. The judgment of the lower court must be sustained on two grounds: First, appellant assumed the risk incident to his employment; and second, he failed to prove any negligent act either of omission or commission against respondent.

From appellant's own testimony, it is clearly established that the danger or hazard, created by the

presence of this small pipe, was open and obvious to him. This is not a case of hidden defect—he admits the pipe was exposed. Furthermore, appellant chose the place and adopted the method of doing the work. The general foreman at no time directed him to use the portable forge, .or to move it over on to the spur track. Appellant admits that this was not his regular working place. The evidence clearly indicates that he made no complaint during the entire day to respondent's foreman, or to any one else, that the place where he was working and which he himself selected was unsafe. In fact, appellant at no time, either on the day of the accident or at any time previous thereto, requested respondent's foreman to clean up in and about the spur tracks where he himself had placed the portable forge. He and his helpers had made twenty-one trips,—that is, they had passed over this place forty-two times prior to the accident. Under all the facts and attendant circumstances, we hold that appellant assumed the risk incident to his employment while working at the portable forge. The rule is well stated in *Deaton v. Abrams,* 60 Wash. 1, 110 Pac. 615, 47 L. R. A. (N. S.) 266. After reviewing numerous authorities from this as well as foreign jurisdictions, we said:

"The consensus of these decisions is, that where the danger is alike open and obvious to the servant as well as the master, both are upon an equality, and the master is not liable for an injury resulting from a danger incident to the employment."

See cases there cited.

It must be borne in mind that appellant is a blacksmith of thirty years' experience, and on the morning of the accident he himself adopted the method by which he chose to do the work, and voluntarily selected his working place without direction from the general fore-

man. In *Newman v. Rothschild & Co.*, 135 Wash. 509, 238 Pac. 2, we said:

"The charge of negligence that the appellant was required to stand upon the timber which had been put in cross sticks has no merit. He had arranged it. If it was dangerous, he knew it better than anyone else could. He had made his own place of work. If it was not a safe place, nobody was to blame but himself."

See, also, *Tham v. Steeb Shipping Co.*, 39 Wash. 271, 81 Pac. 711.

But learned counsel earnestly urge that appellant was entitled to rely on the promise of respondent's foreman that the floor of the blacksmith shop would be kept clean and free of rubbish and debris. There might be room for argument, if appellant had been injured while working around the stationary forge. But he was not. He was injured while working at the portable forge, a place of his own selection. While appellant's counsel cite numerous authorities, they lay especial stress on the case of *Johnson v. North Coast Stevedoring Co.*, 109 Wash. 236, 186 Pac. 663. We quote:

" . . . that at least two or three times the foreman, in answer to these demands, stated: 'I will go see if I can find any sawdust,' or, 'I will go and see what I can do,' or, 'I will go and see if I can get some'; that, these several times, the foreman left the vessel and tried to get some sawdust, and reported back that he had not succeeded in getting any. However, he procured a barrel of wheat chaff, and this was spread upon the slippery floor, but the plaintiff and his fellow workmen *thereafter continued to complain and to demand sawdust*. But appellant contends that the testimony shows that the foreman finally said to the plaintiff and his co-workers that he could not get any sawdust, and that the wheat chaff was all he could get, and that thereafter he made no further promise or assurance of sawdust and ceased his effort in that regard. If this position is supported by the testimony, then the

plaintiff assumed the risk, because the promise itself would have ceased and plaintiff could not have continued his work in reliance upon any promise to repair. The direct and cross-examination of the foreman Riggle supports appellant's contention, but on redirect examination he said: 'After I brought the chaff they said "Get some sawdust. This ain't no good." and I said "I'm trying to get some. Ain't I doing the best I can?" I again went out to get some sawdust.' The testimony of plaintiff's witness Quartman shows clearly that Riggle, the foreman, at no time indicated to the workmen that he had ceased trying to get the sawdust. The testimony of the plaintiff's witness Whitney was certainly to the effect that the foreman finally told the workmen that he could not get any sawdust, and led them to believe that he would not make any further efforts in that direction. The plaintiff testified on that question as follows:

" 'Before I went to work I made complaint to Mr. Riggle (the foreman) I wanted some sawdust. It was not fit to work down there. He said he would try to get some. He went away and came back and said he didn't have any then; it was over in No. 2. He had to have it and he went back again and brought some wheat chaff. After the wheat chaff was brought down I made complaint for some sawdust and he said he would try to get some. When he came back he said "I cannot get any at the present time." After Mr. Riggle said he tried to get some sawdust he went away, but I don't know where he went. Every time we saw Riggle we made complaint for sawdust—I don't know how many times, about eight or nine, or ten times probably.' "

It is at once apparent that the facts in the *Johnson* case, *supra,* are entirely dissimilar and readily distinguishable from the facts in the case now before us. In the *Johnson* case, *supra,* complaint was repeatedly made, within the short space of two hours, of the dangerous condition of the floor, and the foreman attempted to overcome and eliminate these conditions. Here, no complaint was made to the yard foreman of

any rubbish or debris around or about the portable forge. Furthermore, there is a total lack of evidence that the general foreman had any knowledge of the presence of this piece of pipe. It appears that neither the appellant nor his helpers detected the pipe, although they had worked throughout the day, and unquestionably must have passed over it many times. Considering appellant's long experience as a practical blacksmith, respondent had a right to assume that he would not locate the portable forge at a place that was unsafe.

"It may be stated as a general rule that an employee is duly bound to inform himself by all reasonable means concerning the perils of his employment. He must exercise his intelligence, and when a situation suggests investigation and inspection in order that its danger may fully be disclosed he is under the obligation of investigating and inspecting. The master has a right to expect him to be alert to inform himself of existing conditions, and he cannot attack the master from the shelter of unjustifiable ignorance of the business, machinery and methods which he is employed to use. The degree of activity necessarily will depend upon the exigencies of the situation in which he is placed. Where the work is conducted under constantly changing conditions the necessity for vigilance is especially apparent. Latent dangers or defects he is not bound to discover, it being the duty of the employer to warn him of these; but he is held to a knowledge of all such as are obvious or open to ordinary observation." 18 R. C. L., p. 687, § 175.

What we have heretofore said applies with equal force to respondent's second contention: That appellant failed to prove wherein respondent was negligent. We hold, as a matter of law, that respondent's failure to remove the pipe does not constitute negligence. But, even if we should assume that the presence of the pipe and the failure of respondent to detect and remove it constituted negligence, still ap-

pellant could not recover because, First, he failed to prove that respondent's foreman had actual knowledge of its presence; and second, the evidence fails to establish that the pipe had been there a sufficient length of time to have given the foreman constructive notice of its presence. So far as the evidence indicates, it may have been there ten months or ten minutes. It may have been thrown or deposited there by one of appellant's helpers. To hold respondent liable under these circumstances, would be tantamount to make it an insurer of appellant's safety, and this is not the law.

Judgment affirmed.

TOLMAN, C. J., MILLARD, and BEALS, JJ., concur.

[1]Reported in 296 Pac. 824.