[No. 30844.    Department Two.    August 16, 1949.]

WILLIAM J. EBDING *et al., Appellants.* v. LEE FOSTER *et al., Respondents.*[1]

[1] Reported in 209 P. (2d) 367.

*Cameron Sherwood* and *Herman H. Hahner,* for appellants.

*Emory, Howe, Davis & Riese* and *Bean & Minnick,* for respondents.

GRADY, J.—This action was brought by William J. Ebding and wife against Lee Foster and wife to recover damages arising out of an injury to one of Mr. Ebding's eyes while he was in the employ of the defendants. A jury rendered a verdict for the plaintiffs. The court granted a judgment notwithstanding the verdict and made an alternative order granting a new trial. The plaintiffs have taken an appeal. We shall refer to the respective husbands as though they were the only parties to the action.

The factual situation, viewed most favorably to the claims of appellant, is substantially as follows: In 1943, appellant

was employed by respondent on his ranch to do general farm work and drive tractors and trucks. About December 20, 1945, appellant was directed by respondent to put new teeth in a spring-tooth harrow. This work was done in a repair shop on the ranch. While appellant was cutting the head from one of the bolts, it flew and struck him on his cheek. Appellant requested respondent to furnish goggles for his use. Respondent promised appellant that he would get goggles "and put them away so we could have them if we made a trip with the wagons, or backing up a truck or working on the drill. He was going to put them in for use on different parts of the ranch." About February 26, 1946, appellant resumed work on the ranch.

The respondent had six axes, the handles of which needed to be replaced with new ones. Four of them were removed by other employees. On March 20th, respondent directed appellant and another employee to remove the handles from the other two axes. Before undertaking this work, appellant looked around the shop for goggles, but none were there. He placed the handle of one of the axes in a vise and pried out the lugs. He struck the ax several times with a ball-peen hammer. A chip of metal either from the hammer or the ax struck appellant in one of his eyes.

The shop was a building about twenty by twenty-five feet in size. The doors at each end were closed at the time of the accident. There were windows on each side of the shop and some electric lights hanging by drop cords. The windows were dirty and somewhat obstructed by objects and trees. The light above the vise was not in working order. The nearest light was about thirteen feet above the floor and about fifteen feet to one side of the vise. It may be said the shop was poorly lighted, but not to the extent that the appellant could not plainly see the objects upon which he worked and the manner in which the work had to be done.

The appellant bases his right of recovery upon (a) the failure of respondent to furnish a safe place in which to work, in that the shop was improperly illuminated, and (b)

the promise made by respondent to provide goggles for use by appellant and his reliance thereon. The defenses of respondent were that appellant was guilty of contributory negligence, that he assumed the risks incident to his employment, and that his injury arose out of the use of simple tools.

We approach the questions presented by appellant having in mind that, upon a review of the judgment notwithstanding the verdict of the jury it can be affirmed only in the event the court can say, as a matter of law, that there is neither evidence nor reasonable inference from evidence that the shop by reason of insufficient lighting was not a safe place in which to do the work to which the appellant was assigned, and that the promise made by respondent to furnish goggles was not relied upon by him when he undertook to remove the broken handle from the ax.

(a) It was the legal duty of respondent to furnish appellant a reasonably safe place for the efficient performance of the work he was directed to do, which would be a shop with sufficient lighting facilities so that he could properly see and observe the instrumentalities upon and with which he was to perform his duties. Ordinarily, the question of whether an employer has performed his duty in this respect is for the jury to determine, and, if the finding is in the negative, the jury must determine whether such failure of duty was a proximate cause of the injury sustained by the employee.

Our study of the record leads us to the conclusion that reasonable minds cannot differ on this question, and that we must say, as a matter of law, the lighting condition in the shop did not render it an unsafe place in which to do the work assigned to appellant. There is no evidence that the lighting was so poor that the vise, ax, and handle and the hammer were not plainly visible, or that appellant could not see where to strike with the hammer in order to drive the ax off the handle. It is argued that, had the shop been properly lighted, appellant might have observed if the head of the ax was scarred or chipped, or he would have

hit it more squarely and thus prevented what may have been a glancing blow, or with the observations that could have been made he might have selected a different tool or hammer. There was no evidence adduced that the ax was scarred or chipped, and there is no room for any permissible inference to be drawn that if the lighting had been better the accident might not have happened. A finding to this effect would have to rest upon conjecture and speculation.

■ (b) If a place where an employee is assigned to work, or an instrumentality with or upon which he must perform it, is or becomes unsafe or dangerous, and the employer promises the employee that he will remedy the condition, the employee has the right to rely upon the promise and continue with his work for such reasonable length of time as it would appear proper for the promise to be complied with; and in the event he is injured he is not chargeable with having assumed the risks incident to the employment during such time, or until it becomes apparent to him that the employer is not going to carry out his promise. *Crooker v. Pacific Lounge & Mattress Co.,* 29 Wash. 30, 69 Pac. 359; *Shea v. Seattle Lbr. Co.,* 47 Wash. 70, 91 Pac. 623; *Morgan v. Rainier Beach Lbr. Co.,* 51 Wash. 335, 98 Pac. 1120, 22 L. R. A. (N.S.) 472; *Alkire v. Myers Lbr. Co.,* 57 Wash. 300, 106 Pac. 915.

If the danger is of such a character that the remedy lies in supplying a protective device such as goggles, and the promise of the employer is that they will be furnished, the same principles of law apply. In the case of *Johnson v. North Coast Stevedoring Co.,* 109 Wash. 236, 186 Pac. 663, the danger consisted of a slippery floor. The employer promised that he would spread sawdust thereon. In our discussion, we said:

"The rule laid down by the authorities generally, and approved by the many decisions of this court, is that, where an employee goes to work at a place that is, or with machinery and implements which are, defective or dangerous, and he complains to the master of such condition, and gives him to understand that he will quit work unless such con-

dition is remedied, and the master gives the servant assurances that such condition will be remedied, the latter may continue at his labor for such reasonable length of time as it would appear proper for the repair to be made, or the promise of the master to be complied with, provided, he continues at such work relying upon the promises or assurances, and that, under these conditions, the workman will not be held to have assumed the risk. Nor is it necessary that the workman should say in express words that he will stop work unless the repairs are made, but it is sufficient if his words and conduct are such as to indicate to the employer that such was his intention; nor is it necessary that the employer should make any absolute or express promise or assurance of repair or to remedy such defect, but such promise or assurance may be implied from the words and acts of the employer."

The opinion cites a number of our cases, and then sets forth the deduction to be made from them:

"From these authorities it would appear that it was necessary for the plaintiff to prove, in order to recover, the following: (1) that he complained to the foreman of the condition of the floor; (2) that the foreman gave assurances that such conditions would be remedied; (3) that the plaintiff relied upon such assurances; (4) that he was injured before a reasonable time had expired within which the repair could have been done; and (5) that the risks resulting from the condition of the floor were not so imminent as to require the plaintiff to stop work, notwithstanding the promise to repair."

The danger which prompted the promise of respondent to supply a protection to the eyes of appellant was flying bolt heads when cut off by the use of a chisel and hammer. The appellant in his direct testimony said:

"I got the chisel and hammer and cut the bolts off and the last day when I was cutting the bolt the spring tooth flew up and hit me on the cheek and I told him about it and he [respondent] said we should have goggles in there. . . . I asked for goggles and he said they should have some up there and he would see they got some. That is about all that was said."

The subject was again referred to on cross-examination, and appellant was asked for what particular purpose he wanted goggles, and he said:

"I was putting new spring tooth in the spring tooth harrow and the bolts were all rusted and I had to chisel them off. And one flew off and hit me in the cheek and I asked about goggles and he [respondent] said he would get them. . . . Q. Did he, sometime after that, say he would get them, or at any time did he say he would get them? A. He said he should have them and would get them. . . . Q. On or about the 20th day of December, or the 23rd of December, that he promised to get them,—was it the same time? A. That is all he ever said, that was when I got hurt, or hit on the cheek. He said he should have them and that he would get them and put them away so we could have them if we made a trip with the wagons or backing up a truck or working on the drill. Q. Did you require them to be in the shop? A. He was going to put them in for use on different parts of the ranch."

In applying the foregoing test, we find that, after appellant was struck by the bolt head, he informed respondent of the need of goggles to protect his eyes, that respondent assured him goggles would be supplied, and that the risk of injury was not so imminent as to require appellant to refrain from doing work in the shop notwithstanding the promise. Shortly after the promise was made, appellant finished replacing harrow teeth. He was not employed on the ranch for about two months.

About a month after he resumed work, he was directed to go to the shop and remove the handles from two axes. He was fearful of danger to his eyes from flying particles of metal if he used a hammer to drive the ax from the handle. He recalled the promise made by respondent to furnish him goggles, looked about the shop for them, but none were there. He then knew that the promise had not been kept. At this juncture, he had to make a choice whether to refrain from proceeding with the work assigned until goggles were furnished or to no longer rely on the promise and proceed with his work. He chose the latter, and when he did so he assumed the attendant risks

of which he had been temporarily relieved when the promise was made. The promise was no longer an inducement to appellant to continue doing dangerous work without goggles. Not only had a reasonable length of time elapsed, but appellant then knew that goggles had not been furnished for the work he was undertaking. Under such circumstances, the appellant is in no position to claim that he continued work in the shop in reliance upon the promise to supply goggles.

The judgment is affirmed.

SIMPSON, C. J., JEFFERS, ROBINSON, and SCHWELLENBACH, JJ., concur.

